[No. D060107. Fourth Dist., Div. One. Feb. 14, 2012.]

In re MICHAEL G., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
ANGELA G. et al., Defendants and Appellants.

COUNSEL

Rosemary Bishop, under appointment by the Court of Appeal, for Defendant and Appellant Angela G.

Donna Balderston Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant Erick O.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Tahra C. Broderson, Deputy County Counsel, for Plaintiff and Respondent.

M. Elizabeth Handy, under appointment by the Court of Appeal, for Minor.

OPINION

**McINTYRE, Acting P. J.**—Angela G. and Erick O. appeal orders terminating their parental rights under Welfare and Institutions Code section 366.26. (Unless otherwise indicated, further references are to the Welfare and Institutions Code.) They contend the juvenile court erred when it found that their son, Michael, was likely to be adopted within a reasonable time if parental rights were terminated. The parents argue the social services agency's adoption assessment report was inadequate, and the court should have granted a brief continuance to allow the social worker time to receive an updated report from Michael's therapist and the results of Michael's court-ordered psychological evaluation, and to further assess his adoptability in the context of that information. The parents also argue there is insufficient evidence to support the findings that the beneficial parent-child and sibling relationship exceptions to termination of parental rights did not apply. We affirm the findings and orders.

We conclude that the juvenile court erred when it did not order a brief continuance of the section 366.26 hearing to allow time to receive Michael's psychological evaluation and an updated report from his therapist, but the error was harmless in light of other evidence supporting the finding that Michael was likely to be adopted within a reasonable time. Specifically, the reports from Michael's teacher and caregiver support the finding that Michael did not currently display any significant behavioral or emotional problems, despite earlier reports he had had significant behavioral problems while he was in the care of his mother and other relatives. We also conclude there is ample evidence to support the juvenile court's finding there were no applicable exceptions to termination of parental rights. Angela's contention she had a beneficial parent-child relationship with Michael sufficient to overcome the statutory preference for adoption is frivolous and should not have been raised on appeal.

At oral argument, we found it necessary to restate, more than once, the standard of review that applies when the issue on appeal challenges the juvenile court's resolution of disputed factual questions, and to remind the appellants that this court does not substitute its judgment for that of the juvenile court. Appellate practitioners would be well advised to remember it is the function of the trier of fact, not the appellate court, to determine the facts, and to cast their arguments in this court within the confines of that basic principle. (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053 [68 Cal.Rptr.2d 758, 946 P.2d 427] (*Bickel*) [appellate court views all factual matters and resolves all conflicts in the evidence in the light most favorable to the prevailing party]; *In re Zeth S.* (2003) 31 Cal.4th 396, 405 [2 Cal.Rptr.3d 683, 73 P.3d 541] (*Zeth S.*) [it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law].)

## FACTUAL AND PROCEDURAL BACKGROUND

Angela G. is the mother of three sons, Joshua O., Michael G. and Jacob O. (collectively, the children). The children are now ages 11, seven and five years old, respectively. Erick O. is the children's father. He was incarcerated throughout the dependency proceedings, and is mentioned only where relevant to the issues raised in these proceedings. This appeal concerns only Michael.

Michael tested positive for amphetamine at birth and was detained in protective custody. He suffered from withdrawal symptoms. A maternal aunt cared for him for six months. The juvenile court then returned Michael to Angela's care under a plan of family maintenance services, and dismissed dependency jurisdiction in June 2005.

In September 2009 the San Diego County Health and Human Services Agency (the Agency) filed a petition under section 300, subdivision (b), after Angela brought Michael to the hospital seeking care for "a crooked right arm." Michael's arm was broken. The injury appeared to be four to six weeks old. Michael was not living with Angela at the time of the injury. Michael and family members said he fell off his bicycle; however, the physician considered the fracture suspicious for nonaccidental trauma. The head nurse said Angela was not attentive to Michael at the hospital and did not appear to be bonded with him. The Agency also filed petitions on behalf of Michael's brothers.

The Agency placed Michael and his brothers together in foster care. Angela expressed concern about Joshua's and Jacob's reactions to foster care placement. She was not concerned about Michael's adjustment to foster care, stating, "Michael usually doesn't know me." She explained Michael was violent and she had placed Michael in the care of various family members because she could not manage his behaviors. Angela continued to care for Michael's brothers.

Michael lived with his maternal grandmother from ages two to four years old. He then lived with his paternal cousins for four to five months, with a stepcousin for four months and then with his maternal aunt from July to September 2009. Angela told the social worker she wanted Michael to be "adopted out" but expressed interest in providing a stable home "for my other two."

Michael exhibited hyperactivity, and defiant and aggressive behaviors against peers and school personnel. He hoarded food. He had severe tantrums. The social worker stated Michael's behaviors were attention seeking and Angela's care for Michael and understanding of his needs were minimal. According to the social worker, Michael had no attachment to Angela.

The juvenile court granted Angela liberal supervised visits with her children twice weekly, including a six-hour visit on Saturdays. Angela was more affectionate with Michael's brothers than she was with him. She complained she had to take quality time away from Joshua and Jacob to spend time with Michael. Angela asked the social worker to place Michael separately from his brothers to not give him false hope that he would return to her care. Angela's therapist said Angela clearly did not want to resume caring for Michael and continued to blame him for some of her problems.

.

In November 2009 the children were detained with a maternal aunt.

In December 2009 the juvenile court sustained the petition filed on Michael's behalf, and dismissed his brothers' dependency cases. The court offered reunification services to Angela and denied services to Erick, who was incarcerated.

Angela said she did not have time to participate in family reunification services in Michael's dependency case. She visited Michael approximately once a month until June 2010.

The social worker reported that Michael was in good health. He was an active six year old who liked to play with his friends. He had some problems at school with aggressive and defiant behaviors. Michael's kindergarten teacher reported that he was a bright, endearing child who was a quick and active thinker. At times he was so eager for attention that he shouted out or put his hands on his classmates.

Michael remained with his maternal aunt until June 2010, when the aunt asked for his removal due to her high stress levels. He began participating in therapy in August. Michael was then placed with a maternal stepcousin. He was removed from that home after the cousin had an altercation with his partner. After a stay at Polinsky Children's Center (PCC), Michael was placed in foster care in October 2010.

Angela did not visit Michael during his five-week stay at PCC. She visited him approximately six times between October 2010 and June 2011. According to Michael's caregiver, Angela's visits were usually clustered around the time of a juvenile court hearing. Angela told the social worker she loved Michael but he was difficult to handle. He did not listen to her and he acted out for attention. Angela did not have time to participate in family reunification services, and said, "I would rather have Michael adopted into a good home."

In January 2011 the juvenile court terminated reunification services and set a section 366.26 hearing. The court ordered Michael to undergo a psychological evaluation.

The contested section 366.26 hearing was held on June 30, 2011. The Agency reported that Michael was a happy, healthy attractive child who was shy with strangers. He was developmentally on target and doing well at school. He was affectionate with his caregiver. She had not seen any aggression, bedwetting or extreme tantrums since Michael was placed with her.

Michael did not understand the concept of adoption. He wanted to stay with his caregiver. The social worker explained to Michael that his caregiver and her husband had health problems and could not care for him until he was grown up. The social worker identified 18 San Diego families and 74 out-of-state families that were willing and approved to adopt a child like Michael. The Agency had not identified a prospective adoptive family for Michael at the time of the section 366.26 hearing.

The social worker testified she expected to receive Michael's psychological evaluation within a week and would then conduct another assessment to see how many adoptive families were interested in Michael. The number could increase or decrease depending on the psychologist's findings. The social worker said she listed all of Michael's challenging behaviors when screening for prospective adoptive parents, including his tantrums and aggressive behavior. Currently Michael did not display aggressive behaviors but he could be defiant.

Angela testified she had had two three-day weekend visits with Michael in March 2011. When asked whether she wanted Michael to return to her care, she replied, "I think I'm ready for him."

The caregiver testified Angela visited Michael approximately six times while he was in foster care. Angela said she never bonded with Michael. Contrary to Angela's claim, the caregiver testified Michael did not have any overnight visits with Angela. Michael's last visit with Angela was good because Angela interacted with Michael, which was unusual. According to the caregiver, Michael might have a nightmare or wet the bed after he had a visit with Angela but usually readjusted in a few days.

The caregiver and her husband considered adopting Michael. In view of their health problems, they decided adopting Michael would not be in his long-term best interests.

At the close of evidence, Erick's counsel asked the juvenile court to continue the section 366.26 hearing to allow time to receive the results of Michael's psychological evaluation and the social worker's reassessment of adoptive families that had expressed interest in adopting a child like Michael.

The juvenile court denied the continuance. The court found that Michael was likely to be adopted within a reasonable time if parental rights were terminated, and no exceptions applied that would make termination of parental rights detrimental to Michael. The court terminated parental rights.

## APPELLATE MOTIONS

On October 21, 2011, the Agency filed a motion to augment the record with a copy of Michael's psychological evaluation report, dated June 30, 2011. The parents opposed the motion to augment the record, and filed motions to strike the respondent's brief because it contained references to the results of that evaluation.

On November 2, 2011, this court denied the Agency's motion to augment the record. On November 10, this court denied the parents' motion to strike the respondent's brief, and ordered "all references to that evaluation in Respondent's brief are STRICKEN and will not be considered by the court." Accordingly, we did not consider the references to the results of Michael's evaluation in the respondent's brief, or the evaluation itself, in reaching the conclusions set forth in this opinion.

## DISCUSSION

### A

Angela contends Michael's adoption assessment report (assessment report) was inadequate and the juvenile court should have continued the hearing to allow the social worker time to obtain additional information about Michael's emotional and psychological status. She argues there is not substantial evidence to support the juvenile court's findings that Michael was likely to be adopted within a reasonable time if parental rights were terminated (adoptability finding) and the beneficial parent-child relationship and sibling relationship exceptions to termination of parental rights did not apply.

Erick raises no issues in his brief. He adopts by reference Angela's brief and arguments. (Cal. Rules of Court, rule 8.200(a)(5).)

### B

■ At a section 366.26 hearing, the court may select one of three alternative permanency plans for the dependent child—adoption, guardianship or long-term foster care. (*In re Taya C.* (1991) 2 Cal.App.4th 1, 7 [2 Cal.Rptr.2d 810].) If the child is adoptable, there is a strong preference for adoption over alternative permanency plans. (*San Diego County Dept. of Social Services v. Superior Court* (1996) 13 Cal.4th 882, 888 [55 Cal.Rptr.2d 396, 919 P.2d 1329]; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 808–809 [92 Cal.Rptr.2d 20].)

A finding of adoptability requires "clear and convincing evidence of the likelihood that adoption will be realized within a reasonable time." (*Zeth S., supra*, 31 Cal.4th at p. 406; see § 366.26, subd. (c)(1).) The question of adoptability usually focuses on whether the child's age, physical condition and emotional health make it difficult to find a person willing to adopt that child. (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649 [28 Cal.Rptr.2d 82].) If the child is considered generally adoptable, we do not examine the suitability of the prospective adoptive home. (*In re Scott M.* (1993) 13 Cal.App.4th 839, 844 [16 Cal.Rptr.2d 766].) If the court finds the child is likely to be adopted within a reasonable time, the juvenile court is required to terminate parental rights unless the parent shows that termination of parental rights would be detrimental to the child under one of the exceptions listed in section 366.26, subdivision (c)(1)(A) and (B). (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1343–1345 [63 Cal.Rptr.2d 562].)

On review, we determine whether the record contains substantial evidence from which the juvenile court could find clear and convincing evidence the child was likely to be adopted within a reasonable time. (*In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1562 [25 Cal.Rptr.3d 134]; *Zeth S., supra*, 31 Cal.4th at p. 406.) We must affirm the juvenile court's rejection of any exception to termination of parental rights if the court's findings are supported by substantial evidence. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576 [32 Cal.Rptr.2d 535].)

The appellate court does not reweigh the evidence, evaluate the credibility of witnesses or indulge in inferences contrary to the findings of the trial court. (*Bickel, supra*, 16 Cal.4th at p. 1053; *Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968 [108 Cal.Rptr.2d 34]; *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631 [85 Cal.Rptr.2d 386].) The substantial evidence standard of review is generally considered the most difficult standard of review to meet, as it should be, because it is not the function of the reviewing court to determine the facts. (See *Zeth S., supra*, 31 Cal.4th at p. 405.)

C

Angela and Erick contend the Agency's assessment of Michael's adoptability and other relevant evidence does not constitute substantial evidence to support a finding that Michael was likely to be adopted within a reasonable time. They set forth Michael's behavioral history in the light least favorable to the judgment. The parents contend the assessment report did not contain adequate information concerning Michael's mental and emotional status as required under section 366.21, subdivision (i)(1)(C), and the juvenile court erred when it did not continue the case to allow the social worker time to review Michael's psychological evaluation, obtain an updated report from his

therapist and reassess his likelihood for adoption. Relying on *In re Valerie W.* (2008) 162 Cal.App.4th 1, 14–16 [75 Cal.Rptr.3d 86] (*Valerie W.*), *In re Jerome D.* (2000) 84 Cal.App.4th 1200, 1203–1205 [101 Cal.Rptr.2d 449] (*Jerome D.*), and *In re B.D.* (2008) 159 Cal.App.4th 1218, 1233 [72 Cal.Rptr.3d 153] (*B.D.*), the parents contend this court should reverse the adoptability finding and remand the matter for another hearing to determine whether Michael is adoptable.

The Agency acknowledges the record concerning Michael's emotional and behavioral status could have been better developed, and the additional information would have assisted the juvenile court. The Agency asserts the assessment report was adequate and there is substantial evidence to support the adoptability finding.

■ When the juvenile court refers a case to a section 366.26 hearing, it is required to direct the Agency to prepare an assessment report of the child as part of its report to the court. (§§ 361.5, subd. (g), 366.21, subd. (i), 366.22, subd. (c), 366.3, subd. (h); *Valerie W., supra*, 162 Cal.App.4th at p. 11.) The assessment report must address the child's medical, developmental, scholastic, mental and emotional status; analyze the likelihood the child will be adopted if parental rights are terminated; describe the efforts made to identify a prospective adoptive parent or legal guardian for the child; and provide a preliminary assessment of the eligibility and commitment of any identified prospective adoptive parent or legal guardian. (§ 366.21, subd. (i)(1); *Valerie W., supra*, at pp. 11–12.) "The assessment report is 'a cornerstone of the evidentiary structure' upon which the court, the parents and the child are entitled to rely." (*Valerie W., supra*, at p. 11, quoting *In re Crystal J.* (1993) 12 Cal.App.4th 407, 413 [15 Cal.Rptr.2d 613].)

The Agency acknowledges it might have been helpful for the juvenile court to have had an updated report from Michael's treating therapist and the results of Michael's psychological evaluation. We agree. In view of the significance of selecting a permanent plan for a dependent child, the agency should include as much information about the child's status as possible in its assessment report, particularly when the agency has not yet identified a prospective adoptive home for a child who may be considered difficult to place for adoption. (See § 366.26, subd. (c)(3) [if a child is seven years of age or more, or has a diagnosed medical, physical or mental handicap, the child may be found to be "difficult to place for adoption"]; *Valerie W., supra*, 162 Cal.App.4th at p. 14 [an egregiously deficient assessment report may impair the basis of the court's decision to select adoption as the child's preferred permanency plan and to terminate parental rights].)

At the time of the section 366.26 hearing, Michael was seven years old. He had never had a stable home. Michael was born with a positive toxicology for

methamphetamine sufficiently severe to cause him to suffer withdrawal symptoms. He was neglected and ignored by his mother, who reported that he had tried to harm his younger brother. His mother and some of his relative caregivers were not able to manage his active and defiant behaviors. At the time the court ordered the psychological evaluation, Michael had been in a stable foster care home for only three months.

Under those circumstances, the better practice would have been to briefly continue the section 366.26 hearing to allow time to receive Michael's psychological evaluation, which had been completed, to obtain an updated report from his therapist, and to allow the social worker to reassess Michael's adoptability in light of current information. The social worker had an obligation to obtain an updated report from Michael's therapist to evaluate Michael's mental and emotional status. (§ 366.21, subd. (i)(1)(C).) The Legislature recognizes that a child of Michael's age may be found to be difficult to place for adoption. (§ 366.26, subd. (c)(3).) We conclude that the juvenile court abused its discretion when it did not continue the section 366.26 hearing to allow time to receive a current assessment of Michael's adoptability.

As we explained at oral argument, it is not sufficient to show error; the appellant must also demonstrate that the error was prejudicial. When the error is one of state law, as here, the judgment will be affirmed unless the appellate court concludes there is a reasonable probability that a result more favorable to the appellant would have been reached in the absence of error. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) A reasonable probability is one sufficient to undermine confidence in the outcome of the proceedings. (*Strickland v. Washington* (1984) 466 U.S. 668, 694 [80 L.Ed.2d 674, 104 S.Ct. 2052].)

When a parent challenges an assessment report as inadequate, the reviewing court evaluates any deficiencies in the report in view of the totality of the evidence in the appellate record. (*Valerie W., supra*, 162 Cal.App.4th at pp. 14–15.) Here, in view of the strength of the other evidence in the record supporting the adoptability findings, we conclude that the error was harmless. Although the assessment report should have included readily available information about Michael's mental and emotional status, the record contains evidence that is "reasonable in nature, credible, and of solid value" to support the juvenile court's finding that Michael would be adopted within a reasonable time if parental rights were terminated. (*DiMartino v. City of Orinda* (2000) 80 Cal.App.4th 329, 336 [95 Cal.Rptr.2d 16].)

According to the social worker, Michael was a healthy, happy, attractive child. He was affectionate with his caregiver. He did well in school. There

were no concerns about his development, which was age appropriate. His kindergarten teacher said Michael was a bright, endearing child who was eager for attention. Michael's caregiver said he was one of the best foster children she had ever had. She and her husband considered adopting him. The caregiver's interest in adopting Michael is a good indicator he is likely to be adopted by another family. (*In re Asia L.* (2003) 107 Cal.App.4th 498, 510 [132 Cal.Rptr.2d 733] [prospective adoptive parent's willingness to adopt a child generally indicates that child is likely to be adopted by that family or *by some other family*].) Although Michael was seven years old and had a history of behavioral problems, the social worker identified 92 preapproved adoptive families that expressed interest in adopting a child like him.

Michael's circumstances are not like those of the children in *Valerie W.* and *Jerome D.*, in which the reviewing courts concluded that there was insufficient evidence to support the adoptability findings. In *Valerie W.*, one of the siblings had significant health problems and was undergoing tests to rule out a serious neurological disorder. Without that information, there was no evidence to show the children's identified adoptive parents could meet the children's needs. Further, there were questions about the circumstances of the prospective adoptive parent or parents and whether there was a legal impediment to the children's adoption. (*Valerie W., supra,* 162 Cal.App.4th at pp. 14–16.) Similarly, in *Jerome D.*, the assessment did not address the identified prospective adoptive parent's criminal and child welfare history. The child also had a serious, diagnosed medical condition that was not detailed in the assessment report. (*Jerome D., supra,* 84 Cal.App.4th at pp. 1203–1205.)

The parents also rely on *B.D.*, in which this court held that the Agency's adoption assessment report was inadequate and, in view of the complexity of that case, took the unusual step of considering postjudgment evidence to avoid further delay and promote finality of the judgment. (*B.D., supra,* 159 Cal.App.4th at pp. 1232–1234, 1240.) Contrary to appellants' representation, *B.D.* did not merely concern an eight-year-old boy who had not yet received a court-ordered psychological evaluation. (*Id.* at p. 1234.) Rather, that unusual case involved a bonded sibling group of five children, who had a variety of diagnosed psychological problems and developmental delays. The social worker acknowledged it would not be easy to find a suitable adoptive home for the sibling group, and the transition to an adoptive home would be lengthy for several of the children in view of their psychological needs and resistance to adoption. (*Id.* at pp. 1232–1233.)

■ Here, in contrast, the record shows that Michael's aggressive and defiant behaviors significantly diminished while he was in the care of a stable, nurturing and attentive caregiver, and permits the reasonable inference that an equally dedicated adoptive parent could manage Michael's behaviors

without difficulty. The parents do not explain on appeal why the juvenile court should not have credited the observations of Michael's kindergarten teacher and his caregiver. Michael's teacher and caregiver observed his behavior on a daily basis over a period of time. They had more contact with him than did any other person, and could evaluate his status in the context of their experiences with other children. Michael's caregiver would have been willing to adopt him but for her health problems. The juvenile court could reasonably conclude that Michael's behavior at school and home did not indicate he had a serious, undiagnosed mental health disorder that would prevent his adoption within a reasonable time. Despite the deficiencies in the assessment report, we conclude there is substantial evidence to support the finding that Michael would be adopted within a reasonable time if parental rights were terminated. (§ 366.26, subd. (c)(1); *Zeth S., supra*, 31 Cal.4th at p. 406.)

## D

The parents contend there is insufficient evidence to support the juvenile court's finding that termination of parental rights would not be detrimental to Michael under the sibling relationship exception. (§ 366.26, subd. (c)(1)(B)(v).)

■ To determine whether the sibling relationship exception to termination of parental rights applies, the court considers the nature and extent of the child's sibling relationship, including but not limited to "whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(B)(v); see *In re Celine R.* (2003) 31 Cal.4th 45, 54 [1 Cal.Rptr.3d 432, 71 P.3d 787]; *In re Valerie A.* (2007) 152 Cal.App.4th 987, 1007–1008 [61 Cal.Rptr.3d 403].)

Angela and Erick do not show there is insufficient evidence to support the juvenile court's finding the sibling relationship exception did not apply. This court has previously stated the application of the sibling relationship exception will be rare, particularly when the proceedings concern a young child like Michael whose need for a competent, attentive and caring parent is paramount. (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 950 [124 Cal.Rptr.2d 688].) The record shows that Michael had not lived with his brothers for almost two years, and had lived with them only sporadically before 2009. Angela's preference for his brothers was "very sad" for Michael. The social worker believed Angela's differential treatment would have a negative emotional impact on Michael throughout his entire life. Michael seldom saw his brothers and did not usually ask about them except immediately after a visit.

The juvenile court's findings are amply supported by the record. The court could reasonably conclude that Michael and his brothers did not share significant common experiences, Michael did not have existing close and strong bonds with his brothers, and it was not in Michael's best interests to have ongoing contact with his brothers, who remained in their mother's care. (§ 366.26, subd. (c)(1)(B)(v).)

E

Angela contends there is not substantial evidence to support the court's finding the beneficial parent-child relationship exception did not apply. Angela's argument is frivolous.

■ Section 366.26, subdivision (c)(1)(B)(i), provides an exception to termination of parental rights only when "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." This court has interpreted the phrase "benefit from continuing the relationship" to mean "the [parent-child] relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*In re Autumn H., supra*, 27 Cal.App.4th at p. 575.) A substantial positive attachment from the child to the parent results from the adult's attention to the child's needs for physical care, nourishment, comfort, affection and stimulation. (*Ibid.*) "If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*Ibid.*)

Here, there is overwhelming evidence in favor of the juvenile court's finding that Michael did not have a beneficial parent-child relationship with Angela. Due to Angela's drug use during her pregnancy, Michael tested positive for methamphetamine at birth. Angela did not have custody of Michael until he was almost seven months old. After regaining custody, Angela viewed Michael as a source of her problems and placed him in the care of various relatives. Michael was neglected in their homes. He had a broken arm for four to six weeks before Angela took him for treatment. The treating physician observed that Angela was not attentive to Michael and did not appear to be bonded to him. Angela consistently told the social worker she would prefer it if Michael were adopted while she continued to care for her two other sons. Angela refused to participate in reunification services for Michael. She complained that having to spend time with Michael during visits detracted from her time with her other sons. She told the caregiver she never bonded with Michael. Suffice it to say that at no time in his life did Michael receive the loving, nurturing and devoted attention from Angela that characterizes a beneficial parent-child relationship. (Cf. *In re S.B.* (2008) 164 Cal.App.4th

289, 300 [79 Cal.Rptr.3d 449] [the child derived comfort, affection, love, stimulation and guidance from her relationship with her father, whose devotion to her was constant despite his own difficult circumstances].)

■ "Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) However, an issue raised in an otherwise meritorious appeal may be held to be frivolous when " 'it indisputably has no merit—when any reasonable attorney would agree [it] is totally and completely without merit.' " (*Friends of Riverside's Hills v. City of Riverside* (2008) 168 Cal.App.4th 743, 756 [85 Cal.Rptr.3d 695]; see Code Civ. Proc., § 128.5, subd. (b)(2).) This is an objective standard. (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 986 [118 Cal.Rptr.2d 715].)

As we previously discussed, the substantial evidence standard of review is generally considered the most difficult standard of review to meet. When an issue raised on appeal involves only a substantial evidence claim, appellate counsel should consider whether any reasonable person could agree that the trial court's conclusions are not supported by substantial evidence. In deciding whether to raise a substantial evidence claim on appeal, appellate counsel should keep in mind that the appellate court "accept[s] the evidence most favorable to the order as true and discard[s] the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 53 [82 Cal.Rptr.2d 426].)

An issue raised "despite the fact that no reasonable attorney could have thought it meritorious ties up judicial resources and diverts attention from . . . work at the appellate court." (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650.) By tying up judicial resources, a frivolous argument affects the lives of children like Michael who are interested in a prompt resolution of their custody status. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844 [102 Cal.Rptr.3d 481, 220 P.3d 524].)

Michael has never had a stable home. His longest period of stability appears to be the 10 months he spent in foster care preceding the section 366.26 hearing. Michael deserves a committed, caring, stable adoptive parent who is dedicated to meeting his needs. We conclude that the court did not err when it found that Michael was adoptable and termination of parental rights would not be detrimental to Michael under the beneficial parent-child relationship and sibling relationship exceptions to termination of parental rights. (§ 366.26, subd. (c)(1).)

## DISPOSITION

The findings and orders are affirmed.

O'Rourke, J., and Irion, J., concurred.

Petitions for a rehearing were denied March 7, 2012.