Filed 1/8/14  In re J.H. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.H. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> A.H., <br><br> Defendant and Appellant. | E059324 <br><br> (Super.Ct.No. SWJ010218) <br><br> **OPINION** |

APPEAL from the Superior Court of Riverside County.  John M. Monterosso, Judge.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

A.H. (mother) appeals from an order terminating her parental rights to three of her daughters — J.H., now aged nine; S.M., now aged four; and I.M., now aged two. Her sole appellate contention is that, because J.H. had scoliosis, an IQ of 41, and some unpleasant behaviors, the juvenile court erred by finding that the girls were adoptable. We will conclude, however, that the adoptability finding is supported by substantial evidence.

I

FACTUAL AND PROCEDURAL BACKGROUND

As of July 2010, the mother and J.M. (father) had two daughters together — J.H. and S.M. At that time, the Department received a report that the mother had physically and verbally abused J.H.

An investigation revealed that the family was living in a filthy motel room. Both children were filthy. The mother had been diagnosed as bipolar and the father had been diagnosed as schizophrenic; they had been prescribed medication, but they were not taking it. The father abused alcohol.

The parents did not supervise the children adequately. Recently, J.H. had used the father's razor to cut her own hair, cutting her head in the process.

J.H. appeared to be developmentally delayed; at the age of six, she had "limited verbal skills" and still was not potty-trained. She also had severe scoliosis; a rod had been surgically placed in her back.

The Riverside County Department of Public Social Services (Department) detained the children and filed a dependency petition concerning them.

In October 2010, at the jurisdictional hearing, the juvenile court found that it had jurisdiction based on failure to protect.  (Welf. & Inst. Code, § 300, subd. (b).)

In January 2011, at the dispositional hearing, the juvenile court formally removed the children from the parents' custody and ordered reunification services.

In July 2011, the mother gave birth to another daughter, I.M.  The Department immediately detained I.M. and filed a dependency petition as to her.

In September 2011, at a jurisdictional/dispositional hearing regarding I.M., the juvenile court found that it had jurisdiction based on abuse of a sibling.  (Welf. & Inst. Code, § 300, subd. (j).)  It formally removed I.M. from the parents' custody; it denied reunification services, and it set a hearing pursuant to Welfare and Institutions Code section 366.26 (section 366.26).

On the same date, at a review hearing regarding J.H. and S.M.,[1] the juvenile court terminated reunification services and set a section 366.26 hearing.

---

[1]     The hearing could be considered a six-month review hearing (Welf. & Inst. Code, § 366.21, subd. (e)), because the juvenile court had not held a six-month review hearing yet.  Alternatively, as the juvenile court noted, it could be considered a 12-month review hearing (Welf. & Inst. Code, § 366.21, subd. (f)), based on the date of the hearing. As the juvenile court concluded, however:  "I don't think it matters whether we call it six-month or 12-month."

3

In July 2013, at the section 366.26 hearing, the juvenile court found that the children were adoptable and that there was no applicable exception to termination. Accordingly, it terminated parental rights.

II

THE SUFFICIENCY OF THE EVIDENCE OF ADOPTABILITY

A.  *Additional Factual and Procedural Background.*

The evidence introduced and admitted at the section 366.26 hearing consisted of the social worker's report for the hearing. We confine our review to this evidence. (See Welf. & Inst. Code, § 366.26, subds. (b), (c)(1).)

J.H.'s IQ was 41. Her speech was delayed, but it was improving. She could not read or write. She had been diagnosed with attention deficit hyperactivity disorder (ADHD), for which she took Adderall. She attended elementary school, where she was in a special education class.

J.H. was potty-trained, but she would occasionally express anger by urinating or defecating "on the floor, [on] her sisters' toys, in the closet, etc. . . ."

The social worker reported, "[J.H.] has not recently tor[n] off a finger nail or toe nail as she was doing."

The children had been in a total of four placements over the course of the dependency.[2] As of the section 366.26 hearing, they had been placed in their prospective

_____

[2]  I.M. had been in only three placements because she was not born until her sisters were in their second placement.

adoptive home for five months. The social worker reported: "They have quickly bonded with the family. They refer to the prospective adoptive parents as Mama and Papa and to the prospective adoptive parents' children as their brothers and sister. . . . They are very comfortable in their new home."

The prospective adoptive parents were "committed" to adopting all three children. They "[we]re fully aware of [J.H.]'s special needs and [we]re prepared to provide her with the love, care, and services that she needs."

B. *Analysis*.

The juvenile court cannot terminate parental rights unless it finds, "by a clear and convincing standard, that it is likely the child will be adopted . . . ." (Welf. & Inst. Code, § 366.26, subd. (c)(1).) "The finding of adoptability is reviewed under the substantial evidence test. [Citation.]" (*In re K.B.* (2009) 173 Cal.App.4th 1275, 1290 [Fourth Dist., Div. Two].) "We review th[e adoptability] finding only to determine whether there is evidence, contested or uncontested, from which a reasonable court could reach that conclusion. It is irrelevant that there may be evidence which would support a contrary conclusion. [Citation.]" (*Id*. at p. 1292.)

"'The issue of adoptability . . . focuses on the minor, e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor. [Citations.]' [Citation.]" (*In re Zeth S*. (2003) 31 Cal.4th 396, 406.) "'"Usually, the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other

5

matters relating to the child are not likely to dissuade individuals from adopting the minor.  In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*."  [Citation.]'  [Citation.]"  (*In re I.I.* (2008) 168 Cal.App.4th 857, 870 [Fourth Dist., Div. Two].)  "If the child is considered generally adoptable, we do not examine the suitability of the prospective adoptive home. [Citation.]"  (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.)

On the other hand, "[i]n some cases, a minor 'who ordinarily might be considered unadoptable due to age, poor physical health, physical disability, or emotional instability is nonetheless likely to be adopted because a prospective adoptive family has been identified as willing to adopt the child.'  [Citation.]"  (*In re Jose C.* (2010) 188 Cal.App.4th 147, 158.)  "'When a child is deemed adoptable only because a particular caretaker is willing to adopt, the analysis shifts from evaluating the characteristics of the child to whether there is any legal impediment to the prospective adoptive parent's adoption and whether he or she is able to meet the needs of the child.'  [Citations.]"  (*In re R.C.* (2008) 169 Cal.App.4th 486, 494.)

Preliminarily, the mother's argument focuses on J.H. and her special needs.  Her position appears to be that S.M. and I.M. also were not adoptable because they were part of a sibling set with J.H.  This is not the law.  "The child's membership in a sibling set is a relevant consideration in determining whether an *exception* to termination of parental rights exists [citation], . . . or in determining whether the child is *difficult to place* for

6

adoption [citation].  However, the statutory scheme and case law require a determination of the adoptability of a child as an individual . . . . [Citation.]" (*In re I.I.*, *supra*, 168 Cal.App.4th at p. 872.)  Here, S.M. and I.M. were thoroughly unobjectionable children; the juvenile court plainly did not err by finding that they were adoptable.

As to J.H., the very fact that she had been placed with a family that was willing to adopt her was substantial evidence that she, too, was adoptable.  We recognize that "there could be facts that contraindicate adoptability notwithstanding the parent's interest." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1526.)  However, the mother does not point to any here.  There was no legal impediment to adoption.  The prospective adoptive parents were able to care for J.H.'s needs; they had in fact been caring for her needs from February through July 2013.  The social worker who prepared the adoption assessment had "no concern" about their ability to meet her future needs.

The mother argues that the previous placements had failed due to J.H.'s special needs.  However, there was no *evidence* of this before the juvenile court.  While there was evidence that the children had, in fact, been in three prior placements, there was no evidence that J.H.'s special needs had had anything to do with any of the placement changes.[3]

---

[3]     The Department argues that J.H.'s special needs had caused the failure of only one prior placement, at the outset of the dependency.  We need not review the evidence on this point, because it was not before the juvenile court.

The mother also relies extensively on other evidence found in social worker's reports filed at earlier stages in the dependency (which ultimately stretched out over three years). We must repeat, this evidence was not before the juvenile court at the section 366.26 hearing. Thus, it was irrelevant to challenge (or to support) the adoptability finding.

If only out of an excess of caution, we also note that, even if we were to consider this evidence, it would not change our conclusion. J.H. had evidently grown out of any behavioral issues she may have had. Admittedly, she sometimes urinated or defecated in inappropriate places to express anger. Only about a week into the placement, however, the prospective adoptive mother reported that "[J.H.]'s behaviors aren't as severe as what was described and [J.H.] is doing fairly well." A month after that, she reported that J.H. was no longer wearing diapers and that she "makes it to the bathroom most of the time." In the opinion of the social worker, the prospective adoptive parents "[we]re fully aware of [J.H.]'s special needs and [we]re prepared to provide her with the love, care, and services that she needs."

Significantly, the mother's counsel did not argue below that J.H. was not adoptable; while this did not constitute a waiver (*In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1559-1560), it does suggest that her adoptability was self-evident.

We therefore conclude that the juvenile court did not err by finding that all three children were adoptable.

8

III

DISPOSITION

The order appealed from is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
Acting P. J.

We concur:

KING
J.

MILLER
J.