Filed 3/15/16  In re Christopher A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re CHRISTOPHER A. et al., Persons Coming Under the Juvenile Court Law, | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D068397 |
| Plaintiff and Respondent, | (Super. Ct. No. J515843A-E) |
| v. | ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |
| K. A., | |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the opinion filed herein on March 10, 2016, be modified as follows:

1.      On page 1, the first words in the caption, "Adoption of," are changed to "In re," so the first portion of the caption reads:

In re CHRISTOPHER A. et al., Persons Coming Under the Juvenile Court Law,

There is no change in the judgment.


BENKE, Acting P. J.


Copies to:  All parties

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| Adoption of CHRISTOPHER A. et al., Persons Coming Under the Juvenile Court Law, | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D068397 |
| Plaintiff and Respondent, | (Super. Ct. No. J515843A-E) |
| v. | |
| K. A., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Sharon L. Kalemkiarian, Judge.  Affirmed.

Suzanne F. Evans, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

In this appeal, the mother of five children, K. A., seeks review of June 2015 orders of the juvenile court terminating her parental rights to all of the children and referring them to the San Diego County Health and Human Services Agency (Agency) for adoptive placement (Orders). (Welf. & Inst. Code, § 366.26; all further statutory references are to this code unless otherwise stated.) The sole issue on appeal is whether the court erred in finding the beneficial relationship exception to the termination of K. A.'s parental rights inapplicable.

K. A. contends that, consistent with section 366.26, subdivision (c)(1)(B)(i), because she met her burden of establishing the existence of a beneficial relationship with the children, the juvenile court abused its discretion in failing to conclude that the termination of parental rights would not be detrimental to the children. We disagree. Substantial evidence supports the trial court's finding that the beneficial parent-child relationship did not apply here; thus, the juvenile court did not err in concluding that termination of the parental relationship would not be detrimental to the children. Accordingly, we affirm the Orders.

I.

STATEMENT OF THE CASE

A.      *Section 300, Subdivision (b)(1) Petitions*

In September 2013, the Agency filed five petitions, one on behalf of each of K. A.'s five children — eight-year-old Christopher A., Jr. (Christopher); five-year-old C. A. (together, the A.'s); and one-year-old triplets, A. J., M. J and S. J. (triplets) — alleging that the children needed the protection of the juvenile court.  Substantively, the Agency alleged K. A. was unable to provide regular care for the children due to her "mental illness, developmental disability, or substance abuse."[1]  More specifically, the Agency alleged K. A.'s use of amphetamine/methamphetamine; K. A.'s refusal to address her substance abuse issue, despite a prior agreement to do so; K. A.'s history of leaving the children with others without providing for the children's support or empowering the caregivers to make necessary decisions for the children; and K. A.'s unknown whereabouts.  Finally, the Agency alleged a lack of protection and supervision by the children's fathers.[2]

---

[1]     The Agency filed the petitions pursuant to what was then section 300, subdivision (b).  That statute has since been amended, and former subdivision (b) is now found in subdivision (b)(1) of section 300.  (Stats. 2014, ch. 29, § 64.)

[2]     The Agency alleged that Christopher A., Sr., is the presumed father of the A.'s, and Lance J. is the alleged father of the triplets.  Neither father chose to participate in the juvenile court proceedings, and neither father is a party to this appeal.

3

B.      *Post-Petitions Proceedings*

In October 2013, at the contested jurisdiction hearing, K. A. did not appear, her attorney objected to proceeding in her absence, the court overruled the objection and the court heard the matter without her presence.  The court sustained the petitions, finding the allegations to be true by clear and convincing evidence.  The court ordered the children dependents of the juvenile court (§ 360, subd. (d)) under the supervision of the Agency, removed the children from K. A.'s custody and placed them in approved homes of nonrelative extended family members.[3]

In November 2013, at the contested disposition hearing, K. A. again did not appear personally.[4]  In her absence, the court confirmed that the children were dependents of the juvenile court under the Agency's supervision and continued their placements as before.  The court also ordered reunification services for K. A. and allowed K. A. to have supervised visitation with the possibility of lifting the supervision under certain circumstances.

At the six-month review hearing — both the originally scheduled date in May and the continued date in June 2014 — K. A. again did not appear personally.  By this time, the A.'s had a court-appointed special advocate (CASA), and the triplets had a separate CASA — both of whom submitted written reports.  Specifically commenting on K. A.'s

---

[3]    The A.'s were with one caretaker, and the triplets were with another caretaker.

[4]    At the October 2013 jurisdiction hearing, the court had ordered K. A. to appear at the November disposition hearing.

4

lack of contact with the social worker and lack of compliance with services, the court terminated reunification services. The court also found the children's return to K. A.'s custody would be detrimental to the children and there was not a substantial probability of return within the next six months, ordering a section 366.26 hearing to select and implement a permanent plan.

Prior to the commencement of the section 366.26 hearing, in June 2015 K. A. filed a section 388 request[5] to change that part of the June 2014 order terminating reunification services. The court denied the request, ruling that K. A. had not made a prima facie showing of entitlement to relief based on sufficiently changed circumstances.

C.      *Section 366.26 Hearing*

The section 366.26 permanency planning hearing was originally scheduled for September 30, 2014.[6] After numerous continuances, the hearing began on June 10, 2015, a year after the six-month review.

In preparation for the section 366.26 hearing, the Agency filed a report and seven addenda, and the children's CASA's filed four reports. The court heard testimony from two Agency social workers; K. A.; a psychologist who, at K. A.'s request, had performed a bonding study as to the bond between K. A. and each of the A.'s; Christopher; and one

---

5      "[U]pon grounds of change of circumstance or new evidence," a parent may petition the juvenile court "to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." (§ 388, subd. (a).)

6      The section 366.26 permanency planning hearing is also referred to as a selection and implementation hearing. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 298, fn. 2.)

of the A.'s caregivers. The court received into evidence the 12 reports described above, as well as a written report and a curriculum vitae from the psychologist. In closing, the court heard oral argument from counsel.

Based on the evidence presented,[7] the court found as follows with regard to each of the children: adoption is the best permanent plan, in that adoption is in the child's best interest; the child is specifically and generally adoptable; there is a sibling bond, and adoption is the most stable way to save that bond; and none of the exceptions in section 366.26, subdivision (c)(1)(B) applies. Correspondingly, the court ordered as follows with regard to each of the children: K. A.'s (and the father's) parental rights are terminated; the child is referred to the Agency for adoptive placement; the current caregiver is designated the prospective adoptive parent.

The court filed the Orders, one as to each child, on June 29, 2015. K. A. timely appealed from the Orders.

## II.

## DISCUSSION

K. A. argues that the juvenile court erred when it determined the beneficial relationship exception to adoption did not apply and terminated her parental rights. (§ 366.26, subd. (c)(1)(B)(i).) More specifically, K. A. contends that, because of a lack of substantial evidence to support the court's failure to apply the beneficial relationship

---

[7] We will discuss the evidence necessary to a determination of the issue on appeal in part II.B.1., *post*.

exception to the termination of the parent-child relationship, the court abused its discretion in terminating her parental rights.

A.   *Law*

   1.   *Beneficial Relationship Exception to the Termination of Parental Rights*

   After reunification services are terminated, the focus of a dependency proceeding shifts from preserving the family to promoting the best interests of the child, including the child's interest in a stable, permanent placement that allows the caregiver to make a full emotional commitment to the child.  (*In re Jason J.* (2009) 175 Cal.App.4th 922, 935-936 (*Jason J.*).)  At the section 366.26 permanency planning hearing, the juvenile court has three options:  (1) terminate parental rights and order adoption as the permanent plan; (2) appoint a legal guardian for the child; or (3) order the child placed in long-term foster care.  (*Jason J.*, at pp. 935-936.)  As shown by the language of section 366.26, subdivision (b),[8] the Legislature has directed a "mandatory preference for adoption over legal guardianship over long-term foster care."  (*San Diego County Dept. of Social Services v. Superior Court* (1996) 13 Cal.4th 882, 888; accord, *In re Michael G.* (2012) 203 Cal.App.4th 580, 588 (*Michael G.*); *In re Autumn H.* (1994) 27 Cal.App.4th 567, 573 (*Autumn H.*) ["Adoption, where possible, is the permanent plan preferred by the Legislature."].)

_____

[8]   "At the [section 366.26] hearing, . . . the court, in order to provide stable, permanent homes for these children, . . . shall make findings and orders *in the following order of preference*:"  termination of parental rights and adoption; guardianship; and long-term foster care.  (§ 366.26, subd. (b), italics added.)

Thus, once the juvenile court finds that the child is likely to be adopted within a reasonable time, the court *must* select adoption as the permanent plan, unless the court finds that termination of parental rights would be detrimental to the child under one of the specified statutory exceptions. (§ 366.26, subd. (c)(1)(A) & (B); *Michael G.*, *supra*, 203 Cal.App.4th at p. 589; *Jason J.*, *supra*, 175 Cal.App.4th at p. 936.) "The parent has the burden of establishing the existence of any circumstance that constitutes an exception to termination of parental rights." (*In re T.S.* (2009) 175 Cal.App.4th 1031, 1039; accord, *In re Anthony B.* (2015) 239 Cal.App.4th 389, 395 (*Anthony B.*).)

Because a permanency planning hearing occurs "after the court has repeatedly found the parent unable to meet the child's needs, it is only in an *extraordinary* case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350 (*Jasmine D.*).) Emphasizing "the *exceptional nature* of all the circumstances identified in section 366.26, subdivision (c)(1)" in its 1998 revisions to the statute, our Legislature "require[d] the court to find not only that one of the listed circumstances exists, but also that it provide 'a *compelling reason* for determining that termination would be detrimental to the child.' " (*Jasmine D.*, at p. 1349, italics added; see Stats. 1998, ch. 1054, § 36.6.)

Section 366.26, subdivision (c)(1)(B)(i) provides an exception to the adoption preference where termination of parental rights would be detrimental to the child based on a showing *both* that "[t]he parents have maintained regular visitation and contact with the child" *and* that "the child would benefit from continuing the relationship." (*Ibid.*)

8

The first phrase is self-explanatory. The latter phrase ("benefit from continuing the relationship") refers to a parent-child relationship that " 'promotes the well-being of the child *to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents*.' " (*Jason J.*, *supra*, 175 Cal.App.4th at p. 936, quoting from *Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.)

    2.    *Standard of Review*

"We apply the substantial evidence standard of review to the factual issue of the existence of a beneficial parental relationship, and the abuse of discretion standard to the determination of whether there is a compelling reason for finding that termination would be detrimental to the child." (*Anthony B.*, *supra*, 239 Cal.App.4th at p. 395; accord, *In re J.C.* (2014) 226 Cal.App.4th 503, 530-531; *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.) We are aware of authority that suggests we should apply the substantial evidence standard to all of the juvenile court's findings related to the applicability of the beneficial relationship exception to the termination of parental rights. (E.g., *Autumn H.*, *supra*, 27 Cal.App.4th at p. 576; *In re L. Y. L.* (2002) 101 Cal.App.4th 942, 953.) We find the hybrid standard more persuasive and apply it here, even though "[t]he practical differences between the two standards of review are not significant." (*Jasmine D.*, *supra*, 78 Cal.App.4th at p. 1351.)

In our review of the substantiality of the evidence here, all presumptions are in favor of the order on appeal; we consider the evidence in the light most favorable to the respondent, giving the respondent the benefit of every reasonable inference and resolving all conflicts in support of the juvenile court's order. (*Autumn H.*, *supra*, 27 Cal.App.4th

9

at p. 576.) We do not reweigh evidence, evaluate credibility of witnesses or consider inferences contrary to the court's findings. (*Michael G.*, *supra*, 203 Cal.App.4th at p. 589.) The testimony of a single witness or evidence from a single document may be sufficient (Evid. Code, § 411); whereas even uncontradicted evidence in favor of the appellant does not establish the fact for which the evidence was submitted (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 890). All evidence favorable to the respondent " 'must be accepted as true and that which is unfavorable discarded as not having sufficient verity to be accepted by the trier of fact.' " (*In re Brittany H.* (1988) 198 Cal.App.3d 533, 549 (*Brittany H.*).) As particularly applicable here, we must affirm if the order on appeal is supported by substantial evidence, "even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228 (*Dakota H.*).) The issue is not whether there is evidence in the record to support a finding the appellant wishes had been made, but whether there is evidence that, if believed, would support the finding actually made. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 872-873.)

With regard to our review of the juvenile court's exercise of discretion, the appropriate test " ' "is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319 [placement of child based on child's best interest in dependency proceeding].)

10

B.    *Analysis*

Tracking the language of section 366.26, subdivision (c)(1)(B)(i), K. A. contends the juvenile court erred, because she established both that she maintained regular visitation and contact with the children and that the children would benefit from continuing the relationship with her.

1.    *Regular Visitation and Contact*

K. A. acknowledges that her visits with the children were not regular from the beginning of the case in August 2013 until the end of July 2014.[9] K. A. then emphasizes that once she started visiting the children regularly, she continued doing so without interruption, arguing that "[r]egular visitation over the last nine to ten months of the case is a long enough period to *outweigh* any problem periods in the first part." (Italics added.)  Initially, the phrasing of this argument establishes its inapplicability:  K. A. asks us to *weigh* the evidence — by giving more weight to the most recent time period — which we cannot do.  (*Michael G.*, *supra*, 203 Cal.App.4th at p. 589 [the "appellate court does not reweigh evidence"].)  The next problem with this argument is that, in determining whether the record contains substantial evidence to support the court's finding, we must review the evidence in the *entire record*, not just the most recent nine or 10 months preceding the hearing.  (*In re Christopher L.* (2006) 143 Cal.App.4th 1326, 1333.)  Another problem with this argument is that, in our substantial evidence review,

---

9    We note that, in addition to the irregularity of K. A.'s visits, at least once during this time period K. A. discharged herself from a substance abuse program, relapsing to methamphetamine use.

11

we do not consider, let alone focus on, the evidence that would support a finding of regular visitation; we consider only whether the record contains substantial evidence in support of the finding actually made — namely, that K. A. did not maintain regular visitation and contact with the children over the course of the dependency proceeding. (*Brittany H.*, *supra*, 198 Cal.App.3d at p. 549 [we "discard[]" evidence unfavorable to court's finding]; *Dakota H.*, *supra*, 132 Cal.App.4th at p. 228.)  To the extent K. A. contends that, *as a matter of law*, the trial court was *required* to find she maintained regular visitation and contact based on merely "the last nine to ten months of the [21-month] case," she has not provided authority in support of her position, and our research has not disclose any such authority.

Finally, with regard to K. A.'s request that we focus on the evidence of most recent nine to 10 months of visitation, since her opening brief presents only facts favorable to her position, ignoring the evidence favorable to the Agency, we may consider K. A. to have forfeited her right to appellate review of the issue.  (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 ["an attack on the evidence without a fair statement of the evidence is entitled to no consideration when it is apparent that a substantial amount of evidence was received on behalf of the respondent"].)  That is because " ' "[a] party who challenges the sufficiency of the evidence to support a particular finding must *summarize the evidence* on that point, *favorable and unfavorable,* and *show how and why it is insufficient.*" ' "  (*Diaz-Barba v. Superior Court* (2015) 236 Cal.App.4th 1470, 1485.) Nonetheless, given the significant effect of the rulings in the Orders, we exercise our discretion to review the record, to consider the merits of K. A.'s argument, and

12

accordingly to conduct the substantial evidence review and analysis under the standards we introduced *ante*.

We start with K. A.'s concession that, during the first year (August 2013 through July 2014), her visits with the children were not regular, specifically noting that until April 2014, K. A. visited the children only sporadically and that between April and July 2014, she did not visit or contact them at all.[10]  In August and September 2014, the triplets' CASA reported that K. A.'s visits were sporadic.  In October 2014, the social worker arranged for the children's caretakers to allow additional visits, but K. A. did not take advantage of this assistance, instead expressing concern that, because the visits were not officially through the visitation center, the court might not know about them.[11]  In October 2014, K. A. visited the triplets at a sporting event their caretaker had taken them to, but K. A. only stayed for 15 minutes and left because the children's father (who did not visit the children) was waiting for her outside.  In October 2014, K. A. told Christopher she would come to his football game, but she failed to show up, which caused him to have a " 'a meltdown.' "  In late October and early November 2014, she cancelled three of the scheduled weekly visits at the visitation center.[12]  In November

---

[10]    By September 2014, Christopher (who was then nine years old) struggled with outbursts of anger and sadness, feeling that he was not loved.

[11]    Although there is evidence that K. A. visited the children with some consistency during October 2014, there is also evidence that she tested positive for drugs during this time period.

[12]    K. A. asked one of the children's caregivers to state that she (the caregiver), not K. A., had cancelled one of the visits.  In addition, outside the supervisor's presence,

13

2014, K. A. did not respond to an invitation from the triplets' caretaker for an additional visit on Thanksgiving. As of April 2015, K. A. only once arranged for a visit (with Christopher and C.A.) other than the scheduled weekly visits at the visitation center — despite encouragement and authorization from the social worker and both caretakers to do so. Through early June 2015, K. A. missed only one scheduled visit.

The foregoing summary of the evidence demonstrates a commendable improvement in K. A.'s efforts. However, K. A. does not suggest, let alone establish, why this evidence is insufficient to support a finding that she did not maintain regular visitation and contact with the children. Once again, contrary to K. A.'s presentation on appeal, we may neither consider *other* evidence that arguably supports a contrary finding nor reweigh the evidence. (*Michael G.*, *supra*, 203 Cal.App.4th at p. 589; *Brittany H.*, *supra*, 198 Cal.App.3d at p. 549.) For these reasons, K. A. did not meet her burden of showing a lack of substantial evidence to support the juvenile court's finding that, for purposes of section 366.26, subdivision (c)(1)(B)(i), K. A. did not maintain regular visitation and contact with the children.

With this determination, K. A. has not demonstrated error in the related finding that she did not establish the requisite "*compelling reason*" for the court to apply the

---

K. A. told Christopher and C.A. that they would be returning to live with her in February or March 2015. In February 2015, again outside the presence of the supervisor, K. A. repeated this statement, describing the new apartment as one with a swimming pool. There is evidence K. A. continued talking about the case with the older two boys through early June 2015, even after being directed not to. These communications sent mixed signals to the boys, negatively impacting them.

14

beneficial relationship exception to the statutory preference for adoption. (§ 366.26, subds. (b) & (c)(1)(B)(i), italics added.)

2.    *Benefit to the Children of Continuing the Parent-child Relationship*

In the preceding part II.B.1., we concluded that K. A. did not meet her burden of establishing a lack of substantial evidence for the court's finding that K. A. did not maintain regular visitation and contact with the children. Thus, there is no need for us to determine whether the evidence in the record was *also* insufficient to support the *additional* required finding under section 366.26, subdivision (c)(1)(B)(i) that the children would benefit from continuing the parent-child relationship with K. A..

3.    *Termination of Parental Rights*

Because K. A. did not meet her burden of establishing error in the juvenile court's ruling that the beneficial relationship exception set forth in section 366.26, subdivision (c)(1)(B)(i) was inapplicable, the court's ultimate decision to terminate her parental rights did not exceed the bounds of reason — especially given the statutorily mandated preference for adoption once (as here) reunification services have been terminated (§ 366.26, subd. (b); *San Diego County Dept. of Social Services v. Superior Court*, *supra*, 13 Cal.4th at p. 888). Accordingly, the juvenile court did not abuse its discretion in terminating K. A.'s parental rights and referring the children for adoptive placement.

15

## DISPOSITION

Each of the Orders is affirmed.


                                                            IRION, J.

WE CONCUR:


BENKE, Acting P. J.


McINTYRE, J.