Filed 3/25/15  In re W.D. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re W.D., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>COLLEEN D. et al.,<br><br>    Defendants and Appellants. | D066601<br><br>(Super. Ct. No. CJ1132) |


APPEAL from an order of the Superior Court of San Diego County, Laura J. Birkmeyer, Judge.  Affirmed.


Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant Colleen D.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant Mark S.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

Mark S. appeals from an order of the juvenile court terminating his parental rights to William D. Mark's sole contention on appeal is that the juvenile court erred in concluding that the beneficial relationship exception to termination of parental rights and adoption found in Welfare and Institutions Code section 366.26, subdivision (c)(1)(B)(i) is not applicable here.[1] Further, Colleen D., William's mother (Mother), has filed an appeal from the order terminating her parental rights, with the substance of her appeal limited to incorporating by reference the arguments in Mark's brief and arguing that if Mark's parental rights are restored, her parental rights should be as well.[2]

We conclude the juvenile court did not err in concluding that Mark failed to establish that the beneficial parent-child relationship exception to adoption applies to him. We accordingly affirm the order terminating Mark's parental rights. As Mother's argument is wholly dependent on Mark's argument, we also affirm the order terminating Mother's parental rights.

---

[1]    Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

[2]    Mother's notice of appeal indicates she is appealing from the denial of her section 388 petition, which sought to place William with a maternal aunt in Illinois. As Mother has not presented any argument in her appellate briefing on that issue, she has abandoned any claim of error on the section 388 petition, and we do not further discuss the section 388 petition. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

# I

## FACTUAL AND PROCEDURAL BACKGROUND

William was born in November 2012. When William was seven months old, the San Diego County Health and Human Services Agency (the Agency) filed a petition under section 300 alleging that Mother had failed to protect William due to her methamphetamine use. At the June 20, 2013 detention hearing, the juvenile court ordered that William be detained in foster care. Further, as Mother identified Carlos M. as William's biological father, the juvenile court ordered the Agency to conduct a search for him.

The juvenile court made a true finding on the section 300 petition on August 5, 2013, with an order that William be placed in foster care and that the Agency provide Mother with reunification services. At the same hearing, Mark, who was Mother's boyfriend, appeared and requested presumed father status.

Based on paternity testing, it was determined that Carlos is William's biological father. Subsequently, however, Carlos requested that he be stricken from the section 300 petition as William's alleged father. On November 20, 2013, the juvenile court granted Carlos's request and designated Mark as the presumed father pursuant to Family Code section 7611, subdivision (d). The Agency submitted a case plan for Mark, including parenting education and substance abuse services, which the juvenile court approved on December 9, 2013.

At the contested six-month review hearing on April 8, 2014, the juvenile court terminated reunification services for Mother and Mark, finding that neither of them had

3

made substantive progress with their case plans. In the addendum report for the hearing, the Agency noted that substance abuse continued to be a problem for both Mother and Mark. Mother failed to show up for drug tests on multiple occasions; and since being designated a presumed father, Mark had not made himself available for drug testing and "no-showed" for all of the on-demand drug tests. Further, Mark had two pending criminal proceedings for drug-related crimes, with arrests on January 28 and February 6, 2014. Both Mother and Mark also had unstable housing situations, with the Agency's February 4, 2014 report describing them as homeless. As for visitation, Mother and Mark had failed to attend multiple scheduled visits with William, and when Mark did attend the visits he did not demonstrate interest in supervising William. Earlier reports from the Agency stated that Mark had fallen asleep during several visits with William, was often late to visits, and rarely interacted with William.

On August 22, 2014, the juvenile court conducted a permanency planning hearing pursuant to section 366.26. Both Mother and Mark were in custody, but appeared at the hearing. Mark and Mother both argued that the beneficial relationship exception in section 366.26, subdivision (c)(1)(B)(i) applied, and a permanent plan not involving termination of parental rights, such as long-term foster care or guardianship, should be adopted.

As relevant to whether the beneficial relationship exception applied to Mark, the Agency's report for the section 366.26 hearing described Mark's recent interactions with William. Neither Mother nor Mark had any visits with William between April 2014 and June 16, 2014. Although the Agency's report described a few instances of Mark and

4

William playing side by side during visits, many of their interactions were strained or negative. During the June 16 visit, William "struggled to engage with his parents" and separated easily. On the June 24 visit, Mark left the visiting room because of a bad toothache and then was asked by security to leave the building because he was shaking. On June 26, Mark did not attend a scheduled visit. On July 3, Mark started falling asleep during the visit, and William began to cry while Mark was sitting next to him. At a July 8 visit, William did not like being held by Mark and would whimper when Mark tried to carry him. As the Agency summarized the relationship between Mark and William, "[Mark] has demonstrated that it appears to be a challenge to engage in a father[-]son interaction with William. [Mark] slept on many of the visits and displayed a disinterested attitude when having contact with William. . . . [Mark] did not complete a drug treatment program and was suspected to be under the influence of drugs during several of his visits with William. . . . The relationship that [Mark] has with William does not rise to the level of a parent-child relationship as he has essentially failed to maintain his role as a parent."

After finding that William would likely be adopted, the juvenile court concluded that the beneficial relationship exception to adoption did not apply to Mark or Mother. Neither parent had engaged in regular and consistent visitation, and even if they had, severing the parent-child relationship would not deprive William of a substantial positive emotional attachment such that he would be greatly harmed. The juvenile court found by clear and convincing evidence that adoption was in William's best interests, and it

5

terminated the parental rights of Mother and Mark, ordering that William be placed for adoption.

## II

## DISCUSSION

A.  *The Juvenile Court Did Not Err in Concluding That the Beneficial Relationship Exception to Adoption Does Not Apply to Mark*

The sole issue presented in Mark's appeal is whether the juvenile court erred in concluding that the beneficial relationship exception to adoption was not established.

1.  *Applicable Law*

At a permanency planning hearing, once the juvenile court finds by clear and convincing evidence that the child is likely to be adopted within a reasonable time, the court is *required* to terminate parental rights and select adoption as the permanent plan, unless the parent shows that termination of parental rights would be detrimental to the child under one of several statutory exceptions.  (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.)  One of these statutory exceptions is the beneficial relationship exception to adoption, which applies when it would be detrimental to the child to terminate parental rights in that "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)  The burden is on the party seeking to establish the beneficial relationship exception to produce evidence establishing the exception is applicable.  (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314 (*Bailey J.*).)  Once the juvenile court finds that a parent has met his or her burden to establish the requirements

6

of the beneficial relationship exception are present, the juvenile court may chose a permanent plan other than adoption if it finds the beneficial relationship to be "a compelling reason for determining that termination would be detrimental to the child." (§ 366.26, subd. (c)(1)(B); see *Bailey J.*, at p. 1315.)

We apply a substantial evidence standard of review to a juvenile court's findings on whether the requirements for the beneficial relationship exception have been established. (*Autumn H.* (1994) 27 Cal.App.4th 567, 576 (*Autumn H.*).)[3]

"Overcoming the statutory preference for adoption and avoiding the termination of parental rights requires the parent to show *both* that he or she has maintained regular visitation with the child and that the child would benefit from continuing the relationship." (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 643, italics added.) In this case, the juvenile court found that Mark did not establish either requirement. As we will explain, we agree.

---

[3]    As the Agency notes, there is some debate in recent case law on the proper standard of review regarding the beneficial relationship exception. In *In re J.C.* (2014) 226 Cal.App.4th 503, the court applied the substantial evidence standard of review to the factual issues of whether the parent maintained regular visitation and contact with the child and whether the parent proved he or she had a beneficial parental relationship with the child. However, as to the weighing test, in which the juvenile court balances the parent-child relationship against the benefits the child would derive from adoption to decide whether the relationship is a compelling reason to chose a permanent plan other than adoption, the abuse of discretion test applied to "[t]his ' ". . . quintessentially" discretionary decision.' " (*Id.* at p. 531; see *Bailey J.*, *supra*, 189 Cal.App.4th at pp. 1314-1315.) We need not take a position on that issue, as the juvenile court here did not find a beneficial parental relationship and thus did not proceed to weighing whether that relationship was a compelling reason to chose a permanent plan other than adoption.

2.    *Substantial Evidence Supports a Finding That Mark Did Not Maintain Regular Visitation*

The first requirement for the application of the beneficial relationship exception is regular visitation by the parent. "Regular visitation exists where the parents visit consistently and to the extent permitted by court orders." (*In re I.R.* (2014) 226 Cal.App.4th 201, 212.) "Sporadic visitation is insufficient to satisfy the first prong of the parent-child relationship exception to adoption." (*In re C.F.* (2011) 193 Cal.App.4th 549, 554.)

Here, Mark missed numerous visits with William. For example, in the six months prior to the August 22, 2014 permanency planning hearing, Mark failed to attend scheduled visits on March 18 and 25, April 1, and June 26, 2014, and no visits were scheduled between sometime in April 2014 and June 16, 2014. In prior periods, Mark had failed to attend several other visitation appointments, including, most recently, January 21 and 28, and March 11, 2014.

In light of the above, substantial evidence supports the juvenile court's finding that Mark did not engage in regular visitation with William. (See *In re J.C.*, *supra*, 226 Cal.App.4th at p. 531 [substantial evidence supported the juvenile court's finding that the mother did not maintain consistent visitation when she missed five visits, cancelled and changed plans at the last minute, and missed other visits during the last weeks of the dependency case].)

3. *The Evidence Supports the Juvenile Court's Determination That Mark Did Not Have a Beneficial Relationship with William*

Mark also failed to meet his burden to establish that he had a relationship with William that William would benefit from continuing.

The statutory phrase "benefit from continuing the relationship" (§ 366.26, subd. (c)(1)(B)(i)) refers to a parent-child relationship that "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent[-]child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.)

To meet the burden of proof to establish a beneficial relationship, "the parent must show more than frequent and loving contact, an emotional bond with the child, or pleasant visits — the parent must show that he or she occupies a parental role in the life of the child." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527; see *In re Jason J.* (2009) 175 Cal.App.4th 922, 936-937 (*Jason J.*); *In re Derek W.* (1999) 73 Cal.App.4th 823, 827 (*Derek W.*).) The evidence must establish more than merely "a loving and happy relationship" (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1419), and the parent must be more than " 'a friendly visitor.' " (*Jason J.*, at p. 938.) "A child who has been

9

adjudged a dependent of the juvenile court should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be beneficial to some degree, but that does not meet the child's need for a parent." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.) "It is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350.)

Here, Mark did not have a close parental relationship with William. As the evidence showed, when Mark visited William, there was little interaction between them. Mark often slept or appeared disinterested in the visit. On recent visits, William reacted negatively to Mark, whimpering or crying when Mark approached him, and separated easily at the end of the visits. Based on the social worker's observation of the visits between Mark and William, the Agency's report observed that it "appears to be a challenge" for Mark "to engage in a father[-]son interaction with William."

Based on this evidence, the juvenile court reasonably could conclude that Mark did not establish that he "occupies a parental role in the life of the child" (*In re I.W.*, *supra*, 180 Cal.App.4th at p. 1527), and that Mark's relationship to William "bears no resemblance to the sort of consistent, daily nurturing that marks a parental relationship." (*Derek W.*, *supra*, 73 Cal.App.4th at p. 827.) The beneficial relationship exception does not apply, as "[t]here is no evidence [William] had any needs only [Mark] can satisfy, or that he has the type of emotional attachment to [Mark] that would cause [William] to be greatly harmed if parental rights were terminated." (*Jason J.*, *supra*, 175 Cal.App.4th at p. 938.)

We accordingly conclude that there is no merit to Mark's challenge to the juvenile court's determination that the beneficial relationship to adoption is inapplicable to Mark

B.    *Mother's Appeal Lacks Merit*

As we have explained, Mother's appeal is limited to incorporating by reference Mark's briefing, and arguing that if Mark succeeds in restoring his parental rights, her rights should be restored as well.  As we have determined that Mark's appeal lacks merit, we conclude that Mother's appeal also lacks merit.

DISPOSITION

The order terminating Mark and Mother's parental rights is affirmed.

IRION, J.

WE CONCUR:


McINTYRE, Acting P. J.


O'ROURKE, J.