Filed 1/8/16  In re A.B. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.B., a Person Coming Under the Juvenile Court Law. | D068019 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J518921) |
| v. | |
| KRISTIN K., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County,

Sharon L. Kalemkiarian, Judge.  Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and

Appellant.

Thomas E. Montgomery, County Counsel, and John E. Philips, Chief Deputy

County Counsel, and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and

Respondent.

## I.

## INTRODUCTION

Kristin K. (Kristin) appeals a judgment terminating her parental rights to her minor daughter, A.B. Kristin contends that the juvenile court erred by failing to apply the beneficial relationship exception to termination of parental rights (Welf. & Inst. Code, § 366.26, subd. (c)(1)(B)(i)).[1] We affirm.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *A.B.'s initial detention*

On February 26, 2014, law enforcement officers contacted Kristin for violating a restraining order that prohibited her from having contact with her mother. According to the police report, Kristin appeared to be actively psychotic. She believed that words on paper were changing, saw sinkholes swallowing things up, and had a doll in her possession that she believed was a real baby. Law enforcement officers transported Kristin to County Mental Health for evaluation and treatment. She was committed to the hospital pursuant to a 72-hour mental health hold.

While hospitalized, Kristin learned that she was in the late stages of pregnancy. She gave birth to a son, A.B., on March 3, 2014. The following day, Kristin's mental health hold was extended. Medical records revealed that Kristin's "speech and thought

---

[1]    Unless otherwise specified, all subsequent statutory references are to the Welfare and Institutions Code.

2

process was 'loose and disorganized.' "  She was diagnosed with " '[s]chizophrenia, chronic paranoid type, with acute exacerbation, cannabis abuse.' "

On the day of his birth, the San Diego County Health and Human Services Agency (the Agency) received a child welfare hotline referral concerning A.B. According to the referral, Kristin was homeless and had no provisions for A.B.  Kristin reportedly stated that she " 'knew the baby was a boy because he was having sex with her while inside of her.' "  She also indicated that " 'the father did not want the boy because he didn't want anyone inside the mother but him.' "

A County Mental Health case manager informed an Agency social worker that Kristin was aggressive at times and that she had hit her maternal grandmother.  The case manager also informed the social worker that Kristin was not compliant with her medication regime, had previously left residential placements, would make bizarre statements, had a limited support network, and was unable to manage her resources.

On March 6, the Agency filed a petition on behalf of A.B. pursuant to section 300, subdivision (b).  In the petition, the Agency alleged that there was substantial risk that A.B. would suffer serious physical harm or illness due to Kristin's inability to care for him because of her mental illness.  At a detention hearing the following day, the court made a prima facie finding on the petition and detained A.B. in out-of-home care.

B.     *Reunification efforts*

In April 2014, Kristin began to have visitation with A.B. and also began to receive reunification services pursuant to a case plan.  Throughout the reunification period, Kristin was unable to make significant progress toward achieving the objectives

in her case plan. She attended just one therapy session, was unable to participate effectively in a parenting class, did not participate in her psychological evaluation, made nonsensical statements to the social worker, and displayed aggressive behavior toward staff at the care facility at which she was residing. She visited A.B. only sporadically, and due to the number of missed visits, the visitation center terminated services.

In October 2014, the court appointed a guardian ad litem to act on Kristin's behalf, in light of Kristin's inability to understand the dependency proceedings. In November 2014, at the six-month hearing, the trial court terminated services and set the case for a section 366.26 hearing.

C.    *The section 366.26 reports*

In a March 3, 2015 section 366.26 report, the Agency recommended that Kristin's parental rights be terminated and that the court establish adoption as A.B.'s permanent plan. The report stated that Kristin had not visited A.B. regularly and that she did not occupy a parental role in A.B.'s life.

In the report, the Agency documented Kristin's recent supervised visits with A.B. During one visit, Kristin referred to A.B. as " 'ugly' " and made inappropriate comments to a social worker. During a visit on December 23, A.B. spent most of the visit playing with toys by himself and had no visible reaction when Kristin left. Kristin missed a December 30 visit. During a January 16, 2015 visit, Kristin held A.B. in an awkward position that caused both the social worker and the visitation monitor to become concerned for A.B.'s safety. At the end of the visit, A.B. showed no response to Kristin's departure.

4

On January 23, 2015, Kristin spent a portion of the visit speaking to the social worker and the visitation monitor. Her statements were difficult to follow. During the visit, Kristin declined to play with toys with A.B. or to burp him after he ate. Kristin missed another visit on January 30.

On February 6, Kristin arrived at her visitation session with A.B. with a five-inch hole in her pants that revealed that she was not wearing underwear. Kristin did not follow any of the visitation monitor's suggestions to play with toys or look at books with A.B. Approximately 30 minutes into the visit, A.B. motioned for the monitor to take him from Kristin. Kristin began to take A.B. to the monitor. The monitor encouraged Kristin to interact with A.B., and Kristin resumed the visit. Kristin left the visit early.

In addendum reports filed on March 17 and April 15, the Agency noted that Kristin had not visited A.B. since February 13, despite numerous attempts by the social worker to facilitate visitation. The reports also detailed instances in which Kristin made bizarre statements to the Agency social worker or appeared to be confused concerning visitation arrangements.

D. *The section 366.26 hearing*

The trial court held a section 366.26 hearing on April 29. The court did not hear any live testimony, but received in evidence the March 3 section 366.26 report, addendum reports of March 17 and April 15, a March 17, 2015 report from a court-appointed special advocate, and the curriculum vitae of an Agency social worker.

The court found by clear and convincing evidence that it was likely that A.B. would be adopted if parental rights were terminated. The court further found that

5

Kristin had not regularly visited A.B., noting that she had not visited him for two and one-half months prior to the section 366.26 hearing. In addition, the court stated that it appeared that Kristin was unable to parent A.B., that she made negative comments about him, and that she did not appear to know how to interact with him. The court found that the beneficial relationship exception to the termination of parental rights did not apply. Accordingly, the court terminated Kristin's parental rights and referred A.B. to the Agency for adoptive placement.

Kristin's guardian ad litem filed a timely notice of appeal from the judgment terminating her parental rights to A.B.

III.

DISCUSSION

A.    *The trial court did not err when it found that the beneficial parent-child relationship exception did not apply in terminating Kristin's parental rights*

Kristin claims that the trial court erred in finding that the beneficial parent-child relationship exception did not apply to preclude the termination of Kristin's parental rights.

1.    *Governing law and standard of review*

If a dependent child is adoptable, the court must terminate parental rights at the section 366.26 hearing unless the parent proves the existence of a statutory exception to adoption. (§ 366.26, subd. (c)(1).) An exception exists if "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) "A parent asserting the parental benefit

6

exception has the burden of establishing that exception by a preponderance of the evidence." (*In re J.C.* (2014) 226 Cal.App.4th 503, 529.)

With respect to the visitation prong, "[r]egular visitation exists where the parents visit consistently and to the extent permitted by court orders." (*In re I.R.* (2014) 226 Cal.App.4th 201, 212.) The lack of regular visitation "fatally undermine[s] any attempt to find the beneficial parental relationship exception." (*Ibid.*)

This court has interpreted "the 'benefit from continuing the [parent/child] relationship' exception to mean the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)

We review a trial court's finding as to whether "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship" for substantial evidence (§ 366.26, subd. (c)(1)(B)(i)). (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.)

2. *Application*

There is ample evidence to support the trial court's finding that Kristin failed to maintain "regular visitation" (§ 366.26, subd. (c)(1)(B)(i)) with A.B. Kristin did not visit A.B. for a period of more than two months prior to the April 29, 2015 section 366.26 hearing. In addition, Kristin missed scheduled visits throughout February and March 2015, failed to return a social worker's telephone messages regarding visitation in March 2015, and told a social worker on March 30 that she was too busy with school to schedule visits.

Her visitation prior to that time was also sporadic. The six-month status review report states that Kristin did not attend visits consistently and often asked to end visits early. A visitation center terminated visitation services for Kristin on July 30, 2014, due to excessive unexcused absences. In short, there were "significant lapses in visits," (*In re I.R.*, *supra*, 226 Cal.App.4th at p. 212), and thus, there is substantial evidence to support the trial court's finding that Kristin did not maintain "regular visitation and contact" (§ 366.26, subd. (c)(1)(B)(i)) with A.B. sufficient to support the application of the beneficial relationship exception.

Even assuming that Kristin had satisfied the regular visitation prong, there is more than ample evidence to support findings that Kristin's relationship with A.B. was not parental in nature and that her relationship with A.B. was not so beneficial so as to outweigh the advantage that A.B. would gain through adoption. In fact, there is virtually no evidence of a parent-child relationship. With respect to the parental relationship, the record contains evidence that A.B. reacted to both Kristin and

8

strangers in a similar manner. Also, Kristin required "constant supervision and support from the staff at the visitation center." In addition, the record is replete with evidence that Kristin's mental illness impaired her ability to parent A.B. During several visits with A.B., Kristin made bizarre statements to A.B., and on one occasion called him " 'ugly.' " On at least two occasions, when visits ended and Kristin left, A.B. did not show any response. Further, A.B. was removed from Kristin two days after he was born and since August 2014, A.B. had been residing with a family that was committed to adopting him. In short, the record contains overwhelming evidence that A.B. did not have a positive, substantial, emotional connection to Kristin as a parent that would outweigh the benefits A.B. would obtain through adoption.

Accordingly, we conclude that the trial court did not err when it found that the beneficial parent-child relationship exception does not apply to preclude the termination of Kristin's parental rights.

B.    *The appeal is frivolous*

"Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) However, an issue raised "despite the fact that no reasonable attorney could have thought it meritorious ties up judicial resources and diverts attention from the . . . work at the appellate courts." (*Ibid.*) In addition to wasting judicial resources, a "frivolous [appeal] affects the lives of children . . . who are interested in a prompt resolution of their custody status." (*In re Michael G.* (2012) 203 Cal.App.4th 580, 595.)

In this case, for the reasons discussed in part III.A., *ante*, there was plainly substantial evidence to support the trial court's findings that Kristin had not proven the applicability of the beneficial relationship exception. Further, no reasonable attorney could have thought Kristin's appeal to be meritorious. While we decline to impose sanctions, we conclude that Kristin's appeal is frivolous. (See *In re Marriage of Flaherty*, *supra*, 31 Cal.3d at p. 650 [appeal should be held to be frivolous "when any reasonable attorney would agree that the appeal is totally and completely without merit"].)

IV.

DISPOSITION

The judgment terminating Kristin's parental rights is affirmed.


AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

McDONALD, J.