Filed 1/25/16  In re R.A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re R.A. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>PAULA A. et al.,<br><br>    Defendants and Appellants. | G052007<br><br>(Super. Ct. Nos. DP023023<br> & DP023024)<br><br>O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Dennis J. Keough, Judge.  Affirmed.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant Paula A.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant David L.

Leon J. Page, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearances for the minors.

# INTRODUCTION

Paula A., the mother of twins R.A. and L.A., appeals from an order denying her motion under Welfare and Institutions Code section 388 and an order terminating her parental rights under Welfare and Institutions Code section 366.26.[1] She asserts on appeal that she showed the necessary changed circumstances and best interests of the children to qualify for a modification under section 388 and the necessary beneficial relationship with them to qualify for the application of the parental benefit exception of section 366.26, subdivision (c)(1)(B)(i). David L., the children's father, has also appealed the termination order, on the ground that if Paula's parental rights are restored, his must also be restored. He asserts no argument on appeal in his own right.

We review the orders at issue for abuse of discretion and sufficient evidence, respectively. In neither case do we substitute our judgment for that of the juvenile court or reweigh evidence. We cannot find that the juvenile court abused its discretion in denying Paula's section 388 motion; in fact, the circumstances at the time of the hearing remained depressingly similar to the ones that prompted Orange County Social Services Agency (SSA) to detain the children in the first place. Likewise, Paula failed to meet her burden to show that her relationship with the children conferred a benefit on the children greater than a permanent, stable home provided by adoption. Accordingly, we affirm both orders.

# FACTS

Paula gave birth to R.A. and L.A. prematurely in September 2012. Both babies tested positive for methamphetamines, as did Paula, and both babies stayed in the hospital for a month after their birth. Paula adamantly denied using meth before their birth.

---

[1] All further statutory references are to the Welfare and Institutions Code.

After leaving the hospital, the twins were placed with Paula's mother for 12 months. The juvenile court assumed jurisdiction over the twins and ordered their custody vested in SSA, over David's objection. David appealed. We affirmed the jurisdiction and custody orders in an unpublished opinion.[2]

The twins were placed in foster care in September 2013, after Paula's mother could no longer care for them. Paula's compliance with her case plan was minimal at best; she consistently missed drug tests and failed to show up for her counseling appointments. She signed up for a residential drug treatment program in October 2013, testing dirty for methamphetamines at intake. She left the program after only 10 days, but obtained a drug patch in November. At the end of 2013, SSA recommended terminating Paula's reunification services and scheduling a selection and implementation hearing. Paula's reunification services were terminated on December 17, 2013.

In January 2014, the children were placed with a couple who were distant cousins of David. The new caretakers expressed an interest in adopting the twins.

Paula filed a section 388 motion in August 2014, asking to have the twins returned to her under a family maintenance plan. The juvenile court found that Paula had presented a prima facie case for modification and set the matter for hearing, to be combined with the section 366.26 hearing.

The hearings commenced on September 16, 2014, and concluded in May 2015. In December, the court halted the proceedings to obtain bonding studies, which were filed in February 2015. Testimony resumed in March, and the proceedings wound up on May 8.

Until December 2014, Paula appeared to be making genuine progress toward turning her life around and reuniting with the children. She checked into a

---

[2] *In re R.A.* (Aug. 29, 2013, G048111) [nonpub. opn.]. Paula did not appeal from these orders.

3

residential drug treatment program, one that included her six-year-old daughter. She was taking classes, and her visits with the twins were going well for the most part. She was seeing a therapist and taking medication for anxiety, which seemed to be having a positive effect.

All of this improvement came to a screeching halt in December 2014, at a point the court aptly described as a "fracture line." Paula's drug patch tests began to come back positive for methamphetamines. In January 2015, she was caught driving out of the drug treatment center's parking lot with her older daughter hiding on the floor of the car; Paula did not have a driver's license or permission to use the car. Once again, Paula denied taking drugs; the test results were "false positives."

With respect to Paula's section 388 petition, the court ruled that she had not shown changed circumstances. The court noted Paula's relapse into methamphetamine use and her denial, as before, that she had been using as indicating no change in circumstances. The "parking lot incident" of January 2015 also influenced the court's thinking. The court did not believe Paula's excuses for her conduct; instead, it believed that Paula was simply trying to get away from the treatment center, jeopardizing her daughter in the process.

Moving on to the section 366.26 hearing, the court ruled that the children were generally and specifically adoptable. It found that the sibling relationship exception did not apply. It also found that the beneficial relationship exception section of 366.26, subdivision (c)(1)(B)(i), did not apply and terminated the parental rights of both parents.[3]

---

[3] When the twins were about eight months old, David was arrested. During most of the period between detention and termination, he was in jail. After his release, he vanished from view; his lawyer did not know where to find him. He did not participate personally in any of the hearings between September 2014 and May 2015, although his lawyer was present, and was not present when the court terminated his rights.

4

## DISCUSSION

### I.    Section 388 Petition

Section 388, subdivision (a)(1), provides in pertinent part: "Any parent . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." A parent requesting modification of a prior order under section 388 must also show that the modification would be in the child's best interests. (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223.) In determining whether granting the section 388 petition would be in the child's best interests, the juvenile court looks at the seriousness of the problem that led to the child's dependency, how easily the problem can be resolved and whether it has been resolved, and the relative strength of the parent-child and the caretaker-child bonds. (*Id.* at p. 224.) The parent bears the burden of showing both change of circumstances and the child's best interests. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) We review an order granting or denying a petition under section 388 for abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318; *In re B.D.* (2008) 159 Cal.App.4th 1218, 1228.)

We cannot find that the juvenile court abused its discretion in refusing to find changed circumstances. Between December 2014 and April 2015, Paula tested positive for methamphetamines, the very drug whose presence in the twins' systems at birth in September 2012 caused them to be detained. What is even more striking is the consistency of Paula's explanations for how the drugs got there. Back when the twins were born, it was Sudafed or the anesthesia she had been given at the birth that was to blame. This time it was false positives or meth floating around in the air, like second-

5

hand smoke. (See testimony of her expert, Dr. Treuting.) Both times, Paula vehemently denied taking the drug herself.[4]

The court also found that the parking lot incident of January 2015 showed Paula reverting to old habits, and not just because of the many ways it demonstrated exceedingly poor judgment. Not only had Paula, an unlicensed driver, jeopardized her daughter's safety by having her hide on the floor of a moving vehicle instead of strapping her in, she also presented the court with what it found to be an unconvincing excuse for her conduct. This harkened back to the beginning of the case, where she offered a series of ever-increasingly far-fetched explanations for the positive drug tests at the twins' birth.[5]

Paula argues that the court should have granted her section 388 petition notwithstanding her methamphetamine use, tacitly conceding that the positive patch tests were accurate despite her denials of drug use. Paula cites *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322 (*Jennifer A.*) and *In re Drake M.* (2012) 211 Cal.App.4th 754 (*Drake M.*) to support her argument that using drugs should not disqualify a parent from having his or her children returned. In both *Jennifer A.* and *Drake M.*, the parents were allowed to regain custody of their children even though they had used marijuana. (*Jennifer A., supra,* 117 Cal.App.4th at pp. 1327-1328, 1347; *Drake M., supra*, 211 Cal.App.4th at pp. 757, 771.)

---

[4] Paula finally acknowledged she had been using just before the twins were born, but not until the hearing on her section 388 petition, nearly two years later. This was the first instance during the dependency proceedings of her admitting she had been on drugs at the time.

[5] At one point she suggested her first husband could have put the meth in her food while she was pregnant.

6

Neither case supports Paula's section 388 petition.[6] As the *Drake M.* court recognized, "in cases involving [children under six years old], the finding of substance abuse is prima facie evidence of the inability of the parent . . . to provide regular care resulting in a substantial risk of physical harm." (*Drake M., supra,* 211 Cal.App.4th at p. 767; see *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219 [drug use is prima facie evidence of inability to care for children under six].) Paula's twins were under three years old when the court denied her petition.

Paula's argument that she should not be penalized for her drug use also overlooks the basic criteria for modifying an order under section 388: change of circumstances or new evidence. Paula used methamphetamine in September 2012, causing the twins to be born with the drug in their systems. She denied using drugs. Notwithstanding all the classes, counseling sessions, therapy, and meetings during the ensuing two years, she tested positive for methamphetamine beginning in December 2014. She again denied using drugs. Nothing had changed.

Paula also contends that granting the petition would serve the children's best interests, referring to her bond with her children and minimizing the effect of her relapse into drug use. Once again, the juvenile court, exercising its discretion, concluded that the detriment of Paula's drug use and the implications of the parking lot incident outweighed any positive effect her relationship with her children might have.

An examination of the three factors considered when evaluating the child's best interests supports the juvenile court's decision. (See *In re Ernesto R., supra,* 230 Cal.App.4th at p. 224.) The problem that led to the dependency – Paula's drug use – was

---

[6] The procedural posture in both cases was significantly different from the present case. Both opinions dealt with less advanced stages of the dependency process. In *Jennifer A.,* the order appealed from was one terminating reunification services. (*Jennifer A., supra,* 117 Cal.App.4th at p. 1326.) Paula's reunification services were terminated in December 2013. *Drake M.* was even earlier; it was an appeal from an order finding jurisdiction. (*Drake M., supra,* 211 Cal.App.4th at p. 757.) At these early stages, the emphasis is on returning the child to the parent, and the social services agency bears the burden of proof. By the time Paula filed her petition, the emphasis had shifted to permanency and stability for the children, and Paula had the burden of proof. (See *In re Marilyn H.* (1993) 5 Cal.4th 295, 307-309.)

a serious and continuing one. The court must concern itself not just with the impairment that came with such use, one that made looking after two toddlers even more difficult that it would be under ordinary circumstances. Meth is an illegal drug. Where does Paula get it? With whom does she have to associate to obtain it? How is she paying for it? It is not merely the drug use itself but the entire ambiance of the illegal drug culture that is incompatible with rearing two small children. Evidently the problem is not easily removed or ameliorated, as borne out by Paula's relapse into methamphetamine use despite all the assistance she had received over the course of more than two years. As to the last factor – the relative bonds between parent and child and caretaker and child – by the time the court ruled on the section 388 petition, it had two bonding studies, one for Paula and the other for the foster parents. The foster-parent study characterized Paula's relationship to the children as "moderately positive" while the foster parents' relationship to them was "strong," and the evaluator opined in Paula's study that "[t]he nature and quality of their relationship would need to strengthen significantly in order to increase the likelihood of [the children] significantly benefitting emotionally and socially under the guidance and/or interactions with [Paula]." When the bonding studies were filed, the twins, detained at birth, were nearly two-and-a-half years old. The juvenile court was well within its discretion to conclude that Paula had had enough time to straighten herself out.

We cannot say that the juvenile court abused its discretion when it found Paula had not made the necessary showing for a modification of an order under section 388. The circumstances had not changed, and all three factors militated against a finding that a modification would serve the children's best interests.

## II.        Termination of Parental Rights

The juvenile court found the twins generally and specifically adoptable, and Paula does not dispute this finding on appeal. Although counsel argued at some length about the sibling exception to the termination of parental rights under section

8

366.26(c)(1)(B)(v),[7] Paula did not identify the court's ruling on this exception as an issue. Instead, she focuses on the exception of section 366.26, subdivision (c)(1)(B)(i), which permits the court to override the preference for adoption as "detrimental to the child" because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." The parents have the burden of showing the existence of the circumstances supporting the application of an exception to termination. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 574.) We affirm the juvenile court's determination regarding exceptions to termination of parental rights if substantial evidence supports it. (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.) It is the appellant's burden to show that a finding is not supported by substantial evidence. (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 947.)

We must emphasize again that we do not reweigh evidence; instead we assume the correctness of the lower court's determination and require the appellant to demonstrate that the lower court committed prejudicial error. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 423; *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1322-1323.) Leaving aside all the evidence about drug use and other deficiencies, the bonding studies alone support the court's determination that the beneficial relationship exception does not apply here. In addition to reviewing the SSA reports, the evaluator observed both Paula and the foster parents interacting with the children. With respect to Paula, he concluded, among other things, that the multiple interventions she had received had not been successful and the children would be at risk because of her ongoing problems, particularly with drugs. With respect to the foster parents, who wanted to adopt the twins, he concluded the children would have a caring home – one in which their emotional, social, and

---

[7] Section 366.26(c)(1)(B)(v) allows the juvenile court to forego adoption when "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption."

psychological needs were consistently met – and the benefits of a continuing emotional bond. The evaluator characterized Paula's relationship with the twins as "moderately positive" or "minimally positive." We cannot quarrel with the trial judge's conclusion this was not a strong enough benefit to overcome the legislative preference for adoption.

## III.        David L.'s Appeal

David did not present any argument or authority on appeal in his own right. He joined in Paula's appeal, on the ground that if the order terminating her parental rights were reversed, the order terminating his rights would have to be reversed as well. In this, he is correct. (See Cal. Rules of Court, rule 5.725(g).) Since, however, we affirm the order terminating Paula's parental rights, and David has not offered any additional reasons why the order should not apply to him as well, the order terminating his rights is also affirmed.

## DISPOSITION

The order denying Paula's section 388 petition is affirmed. The order terminating Paula's and David's parental rights is affirmed.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.


10