Filed 7/29/22 P. v. Fee CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TIMOTHY CHARLES FEE,<br><br>    Defendant and Appellant. | Consolidated Cases Nos.<br>F078512 & F081881<br><br>(Super. Ct. No. 2066877)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County. Joseph R. Distaso, Judge.

David L. Polsky, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Matthew Rodriquez, Acting Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman, A. Kay Lauterbach and Christopher J. Rench, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Timothy Charles Fee was charged with first degree murder (Pen. Code,[1] § 187, subd. (a)), namely, murder committed in the perpetration of a robbery and/or kidnapping (§ 189, subd. (a)). The information further alleged that he (1) had been released on bail prior to a judgment becoming final on an earlier felony offense (§ 12022.1); (2) was previously convicted of kidnapping, a serious felony (§ 667, subd. (a)) and a qualifying "strike" under the Three Strikes law (§ 667, subd. (d)); and (3) served a prior separate prison term (§ 667.5, former subd. (b)). Defendant admitted the on-bail allegation. Following trial, the jury convicted him of murder committed in the perpetration of a robbery. In a bifurcated proceeding, the trial court found true the remaining special allegations. Defendant received an aggregate sentence of 58 years to life, consisting of a doubled base term of 50 years to life plus five years for the prior serious felony enhancement, two years for the on-bail enhancement, and one year for the prior prison term enhancement. On December 12, 2018, he filed a notice of appeal, which was assigned case No. F078512. On October 24, 2019, we granted defendant's motion to stay the appeal and remanded the matter for the limited purpose of conducting proceedings pursuant to section 1172.6 (former § 1170.95).[2]

On November 22, 2019, in accordance with our instructions, defendant filed a section 1170.95 petition for resentencing. The trial court determined that a prima facie case for relief was made and issued an order to show cause. On October 6, 2020, following an evidentiary hearing, the court denied the petition, finding that defendant "could have been an actual killer, beyond a reasonable doubt"; "was clearly an aider and abettor in the case"; and "clearly is responsible" as a "major participant" in the robbery.

[1] Unless otherwise indicated, subsequent statutory citations refer to the Penal Code.

[2] Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). We refer to former section 1170.95 throughout this opinion for clarity and convenience. For brevity, we will not use the word "former."

On October 19, 2020, defendant filed a notice of appeal, which was assigned case No. F081881. On November 17, 2020, we granted his motion to consolidate his appeals under case No. F078512.

In an opening brief filed December 22, 2020, defendant presented two arguments. First, "the trial court prejudicially erred by applying an incorrect standard of proof"—i.e., the substantial evidence test—"in determining that [he] was ineligible for relief under section 1170.95." (Boldface & capitalization omitted.) Second, the prior prison term enhancement must be stricken in view of Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill No. 136), which amended section 667.5, subdivision (b). (Stats. 2019, ch. 590, § 1, eff. Jan. 1, 2020.) In a respondent's brief filed March 25, 2021, the Attorney General conceded that the prior prison term enhancement must be stricken.

In October 2021, a few months after this case was fully briefed, the Legislature enacted Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill No. 775), which amended section 1170.95. (Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022.) Among other things, Senate Bill No. 775 "[r]eaffirms that the proper burden of proof at a resentencing hearing under this section is proof beyond a reasonable doubt." (*Id.*, § 1, subd. (c); see § 1170.95, subd. (d)(3).) We ordered the parties to file supplemental briefs addressing the applicability of Senate Bill No. 775.

In a supplemental letter brief filed June 23, 2022, defendant contends that Senate Bill No. 775 applies retroactively to the case and asks us to remand the matter for a new evidentiary hearing because the trial court "applied . . . the substantial evidence test rather than the proof beyond a reasonable doubt standard . . . in assessing the evidence of his guilt under a still-valid theory of liability."

In a supplemental letter brief filed July 1, 2022, the Attorney General concedes that Senate Bill No. 775 applies but counters that remand is not warranted because the court "independently assessed the evidence and applied the beyond a reasonable doubt standard" with respect to "its aiding and abetting and/or major participant findings."

3.

We conclude that the trial court erroneously applied a lower standard of proof in pronouncing that "the jury *could* find, beyond a reasonable doubt, that [defendant] was an actual killer based on [the] evidence" (italics added), but the error was harmless in view of its other findings. We also accept the Attorney General's concession that the prior prison term enhancement must be stricken.

## STATEMENT OF FACTS

### I.    Prosecution's case-in-chief

On August 8, 2016, at approximately 10:00 or 10:30 p.m., David H. (see Cal. Rules of Court, rule 8.90(b)) informed his wife that he was "going camping." At approximately 11:30 p.m., he texted his adult daughter and arranged to visit her the following day. David departed in his white 1999 Dodge Durango.

On the morning of August 9, 2016, David's wife texted David, but she did not receive a response. Initially, she "figured he was out of the [cell phone coverage] area." However, when she did not hear back from him for a few days, she became concerned.

On August 11, 2016, David's decomposed body was discovered in the Delta-Mendota Canal. Dr. Sung-Ook Baik, a forensic pathologist, conducted the autopsy. He observed fractured thyroid cartilage on the right side of David's neck, which "indicate[d] there was pressure around the neck." In addition, the lungs were filled with water. Given the degree of damage to the thyroid cartilage, Baik opined the cause of death was "more likely" strangulation than drowning. He did not rule out the possibility that David may have only been rendered unconscious before he was placed in the canal. A toxicology report confirmed the presence of methamphetamine, but Baik believed that drug intoxication was "not directly related to the cause of death."

On August 12, 2016, police officers came across David's Durango in a parking lot near the intersection of Coolidge Avenue and McHenry Avenue in Modesto. Three individuals stood next to the sport utility vehicle (SUV): defendant, codefendant Jairo Ramirez, and a female. When the officers approached the group, defendant headed

4.

toward a nearby fast food restaurant while Ramirez and the female went in a different direction. The officers eventually apprehended defendant, who possessed the keys to the Durango and a money clip that belonged to David.

During a subsequent search of the Durango, officers found a "military-style hunting knife" on the driver's seat; various store receipts; a pawn shop slip with Ramirez's name; and a camouflage backpack. Inside the backpack were three cylinders, each of which were wrapped in cellophane. The cylinders contained various substances, including heroin, marijuana, methamphetamine, and tobacco.[3]

The Stanislaus County Sheriff's Department obtained surveillance footage from various businesses. Footage recorded on August 9, 2016, showed: (1) sometime after 3:00 p.m., defendant and Ramirez visited a pawnshop, where the former bought a hunting knife and the latter pawned a one-ounce piece of gold that belonged to David for $1,000; (2) at 3:48 p.m., David's Durango was parked outside a convenience store, where defendant purchased lottery tickets; (3) at approximately 4:00 p.m., defendant parked the Durango, entered a department store, and purchased "two bundles of braided rope"; (4) sometime before 9:00 p.m., defendant and Ramirez entered a different department store; and (5) at around 9:30 p.m., the Durango was parked outside a Walmart, where defendant—accompanied by Ramirez—made an undisclosed purchase. Footage recorded on August 10, 2016, showed that defendant visited an automotive parts retailer and bought a tow hitch. Footage recorded on August 11, 2016, showed that—at approximately 2:00 a.m.—defendant parked the Durango, carried the camouflage backpack, and entered a motel.

Detective Rodriguez of the Stanislaus County Sheriff's Department interviewed defendant on August 14, 2016. According to defendant, he encountered David—an

---

[3] Officer Hammond of the Modesto Police Department testified that such cylinders are used to surreptitiously transport contraband into jail.

acquaintance—"purely by chance" at "the airport." (Capitalization omitted.) Defendant then called Ramirez and informed him that he contacted "an old boy" who "bragg[ed] about shipping large amounts of dope" and "was dumb enough to let him borrow his truck or ride his truck." Defendant and David "went to go get [Ramirez]" (capitalization omitted) and the three traveled to a park to look through the Durango. There, David indicated that he "didn't want to be there anymore" and an argument ensued. The dispute continued inside the Durango. As defendant was driving, the exchange between David and Ramirez in the rear of the vehicle became more heated. David "was tellin [Ramirez] that there was no more drugs in the truck and all this other shit," but Ramirez "didn't believe him." (Capitalization omitted.) "[T]he more [David] talked, the more [Ramirez] got pissed off" and the Durango "bounced all over the fuckin road." (Capitalization omitted.) Defendant "turned the stereo up louder so [he] couldn't fuckin hear it." (Capitalization omitted.) Eventually, Ramirez "climbed up [to the front passenger seat] through the middle" and defendant heard "moaning and gurgling noises" behind him. (Capitalization omitted.) Per Ramirez's directions, defendant stopped near a wooden bridge traversing the Delta-Mendota Canal. Defendant and Ramirez removed David from the vehicle. Although David "was unconscious" and "was breathing" (capitalization omitted), defendant and Ramirez placed him into the canal.

At trial, the parties stipulated that Ramirez pled guilty to the unlawful killing and felony robbery of David on August 8, 2016.

## II.     Defense's case-in-chief

Defendant testified that he first met Ramirez in prison in 2009 and the two became close friends. In 2015, after defendant was released, he "got back in touch" with Ramirez.

On August 8, 2016, defendant came across David at a liquor store in Modesto's "Airport District." He knew David "from drug sales in that general area" and learned that he was making a profit "mailing drugs back east." Defendant, who was "going back to

6.

prison" for a gun-related offense, wanted to collaborate with David to "make some money real quick" "to support [him]self the next year or so." He wanted to include Ramirez, who was also going back to prison and "had money issues."

Defendant and David picked up Ramirez in the Durango. Thereafter, defendant "ended up just driving around." All three were consuming drugs and alcohol. Initially, the men got along. Later, however, David and Ramirez started arguing about "a small quantity [of drugs] that they couldn't find" in the vehicle. At some point, Ramirez "jump[ed] from the back of the truck up to the front and told [defendant], 'Shit went out bad.' " Ramirez stated that David was dead and the body needed to be disposed. Defendant, who "had no knowledge [of] what went on in the back until [Ramirez] jumped up in the front," "freaked out." The Durango "ended up at the canal" and defendant "help[ed] [Ramirez] dump David's body into the canal."

Defendant admitted that he intended to sneak the cylinders of drugs—a.k.a., "keister pack[s]"—into jail.

## DISCUSSION

I. **Denial of defendant's section 1170.95 petition**

a. *Background*

On November 22, 2019, defendant filed a petition for resentencing pursuant to section 1170.95. He claimed that he "could not now be convicted of felony murder because (1) he was not the actual killer, (2) he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree, [and] (3) he neither was a major participant in the felony nor acted with reckless indifference to human life during the course of the felony . . . ." On June 2, 2020, the court determined that a prima facie case for relief was made and issued an order to show cause.

On June 30, 2020, the People filed an opposition to the petition, arguing that defendant "could still be convicted of murder" "[b]ecause a reasonable jury could find

7.

that [he] was an actual killer, a major participant who acted with reckless indifference to human life in the robbery and murder, and/or an aider and abettor in the murder." In a reply filed September 9, 2020, defendant asserted that "[t]he standard of proof . . . is proof beyond a reasonable doubt."

On September 28, 2020, Division One of the Second Appellate District became the first court to weigh in on the appropriate standard of proof at a section 1170.95 hearing when it issued *People v. Duke* (2020) 55 Cal.App.5th 113, review granted January 13, 2021, S265309 (*Duke*), judgment vacated and cause remanded for further consideration in light of Senate Bill No. 775. (See *People v. Lopez* (2020) 56 Cal.App.5th 936, 949, review granted Feb. 10, 2021, S265974, judg. vacated and cause remanded for further consideration in light of Sen. Bill No. 775.) In *Duke*, the appellate court held:

> "In deciding a petition at the final stage of review under section 1170.95, the trial court applies a very different standard. The prosecution bears the burden 'to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' (§ 1170.95, [former] subd. (d)(3).) The primary requirement for eligibility for resentencing under section 1170.95 is that '[t]he petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' (§ 1170.95, [former] subd. (a)(3).) To carry its burden, the prosecution must therefore prove beyond a reasonable doubt that the defendant *could* still have been convicted of murder under the new law—in other words, that a reasonable jury could find the defendant guilty of murder . . . . This is essentially identical to the standard of substantial evidence, in which the reviewing court asks ' "whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. . . . [¶] . . . ." [Citation.]' [Citation.]" (*Duke*, *supra*, 55 Cal.App.5th at p. 123, rev.gr., vacated, fn. omitted.)

An evidentiary hearing on defendant's petition was conducted on October 6, 2020. At the outset, the court stated that it had "reviewed all the filed pleadings" and "the most recent case law." It referred to *Duke* as "right on point" and reiterated the holding:

8.

"People must prove beyond a reasonable doubt that the defendant could still have been convicted of murder under the new law. [¶] And so what that means is here, either he was the actual killer, he was an aider or abettor, or he was a participant pursuant to the felony murder r[u]le . . . . [¶] . . . [¶] . . . So as long as one or all of those could have been met beyond a reasonable doubt, then the petition would be denied."

After listening to counsels' arguments, the court pronounced:

"Okay. . . . I do believe the jury could find, beyond a reasonable doubt, that Mr. [Fee] was an actual killer based on this evidence, as I've just quoted it.[4] So . . . I believe under that prong, Mr. [Fee's] petition is denied. But it's denied under all three prongs, quite frankly.

"So Mr. [Fee's] petition for resentencing pursuant to . . . Section 1170.95 is denied under all three prongs. The Court finds he could have been an actual killer, beyond a reasonable doubt. The Court finds that he was clearly an aider and abettor in the case.

"It defies all common sense that he did not know what was going on in the SUV. An SUV is not a large vehicle, and he's driving the vehicle, while he knows [David] doesn't want to be there and he hears a violent struggle and strangulation occurring in the back. There's no possible way, in the Court's mind, he did not know what was going on and that he aided and abetted by continuing to drive while [David], number one, wanted to leave and was being strangled to death.

"So under the major participant factor[s], under the *Banks*[5] factors, he clearly is responsible under all six of those. Let me see.

---

**4** The court had noted:

"I think what [Dr. Baik] said was it was more likely that [the victim] had been strangled, but it was possible that . . . the cause of death was also drowning or was drowning. [¶] . . . [¶]

". . . I think he said that, yeah, strangulation was the likely cause of death, but he couldn't rule out drowning.

"So if that's the case, though, when Mr. Fee said that he thought [David] was still alive and he picked him up, with Mr. Ramirez's help, and they put him into [the] canal, he'd be an actual killer if he died from drowning, and there was evidence of that."

**5** *People v. Banks* (2015) 61 Cal.4th 788.

9.

"What role did he have in planning the criminal negligence? It was his idea to meet up with [David] and either, you know, rob him, get drugs, whatever it was. That was clear from the evidence. That's number one.

"Number two, what role did he have in supplying or using the lethal weapons? Well – I mean, either he put [David] into the canal while [David] was still alive, or he made [David] available to Mr. Ramirez, who Mr. Fee obviously knew . . . was up to no good that day. They weren't meeting with [David] just to like hang out and . . . be friends with him. In the Court's opinion they were meeting him to rob him.

"And Mr. [Fee's] own statement, oh, he found, you know, a good ole' boy or – I can't remember the exact language, but something of that nature, an old boy who was dumb enough to . . . let them use his car. All right. That's not a statement of someone who intends to be friends with someone and, hey, can I borrow your car, or whatever. They want to take advantage of him, and that's what they did.

"Number three, what awareness did he have of the dangers posed? He was completely aware, in the Court's opinion, of exactly what was going to occur.

"Number 4, was he present at the scene of the killing? Yes.

"Was [he in] a position to facilitate or prevent the actual murder? Yes. Did . . . his or her own actions or inactions p[l]ay a particular role in death? Yes. He didn't do anything to stop the killing in any way. And he could have. Even after he knew [David] no longer wanted to be there and that there was a problem, he did absolutely nothing to stop it, and instead he facilitated its continuation.

"And finally, what did the defendant do after lethal force was used? He picked up [David] and he threw him into the canal.

"So this petition is denied for all the reasons that the Court just stated. That's the Court's ruling."

In the months following this ruling, various courts issued opinions criticizing *Duke*. (See, e.g., *People v. Fortman* (2021) 64 Cal.App.5th 217, 223-226, review granted July 21, 2021, S269228, judg. vacated and cause remanded for further consideration in light of Sen. Bill No. 775; *People v. Clements* (2021) 60 Cal.App.5th 597, 613-618, review granted Apr. 28, 2021, S267624, judg. vacated and cause remanded for further

consideration in light of Sen. Bill No. 775; *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 240-244, review granted Mar. 10, 2021, S266652, judg. vacated and cause remanded for further consideration in light of Sen. Bill No. 775; *People v. Lopez*, *supra*, 56 Cal.App.5th at pp. 949-951, rev.gr., vacated.)

  b. *Relevant law*

    i. <u>Senate Bill No. 1437</u>

 "Effective January 1, 2019, the Legislature passed Senate Bill [No.] 1437 [2017-2018 Reg. Sess.] 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*), quoting Stats. 2018, ch. 1015, § 1, subd. (f).)  "Through the passage of Senate Bill [No.] 1437 the Legislature effectively eliminated the natural and probable consequences doctrine as it relates to murder convictions, and reduced the scope of the felony-murder rule." (*People v. Prado* (2020) 49 Cal.App.5th 480, 487; see §§ 188, subd. (a)(3) ["Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."]; 189, subd. (e) ["A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."].)

11.

Senate Bill No. 1437 (2017-2018 Reg. Sess.) also "added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis*, *supra*, 11 Cal.5th at p. 959.) "Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' " (*Id.* at pp. 959-960, quoting § 1170.95, former subd. (a)(1)-(3); see § 1170.95, subd. (b)(1)(A).) "Where the petition complies with [section 1170.95,] subdivision (b)'s three requirements,[6] then the court proceeds to [section 1170.95,] subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief." (*Lewis*, *supra*, at p. 960, quoting § 1170.95, former subd. (c).) "If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' " (*Lewis*, *supra*, 11 Cal.5th at p. 960, quoting § 1170.95, former subd. (d)(1).)

---

[6] "The petition shall include all of the following: [¶] (A) A declaration by the petitioner that the petitioner is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1)(A)-(C).)

Section 1170.95, former subdivision (d)(3) read:

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges. The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens."

### ii. Judicial construction of section 1170.95, former subdivision (d)(3)

Prior to January 1, 2022, "there was a split of authority as to whether at the section 1170.95, subdivision (d) hearing, the trial court acts as an independent fact finder or applies the substantial evidence test described in *Duke*." (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745 (*Garrison*); see *People v. Ramirez* (2021) 71 Cal.App.5th 970, 984; *People v. Mancilla* (2021) 67 Cal.App.5th 854, 863; *People v. Rivera* (2021) 62 Cal.App.5th 217, 239, fn. 13.)

### iii. Senate Bill No. 775

In October 2021, the Legislature enacted Senate Bill No. 775, which amended section 1170.95. (Stats. 2021, ch. 551, § 1 et seq.) Effective January 1, 2022, section 1170.95 now provides that "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter" may file a petition to have that conviction vacated under certain circumstances. (§ 1170.95, subd. (a); see *People v. Langi* (2022) 73 Cal.App.5th 972, 978 [Sen. Bill No. 1437 (2017-2018 Reg. Sess.) "transformed the law of accomplice liability for murder" and Sen. Bill No. 775 "expanded the scope of those changes"].) Senate Bill No. 775 also "[r]eaffirms that the proper burden of proof at a resentencing hearing under this section is proof beyond a reasonable doubt" (Stats. 2021, ch. 551, § 1, subd. (c)), "abrogating *Duke*"

(*Garrison*, *supra*, 73 Cal.App.5th at p. 745).  Section 1170.95, subdivision (d)(3) now provides:

> "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019.  The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  The court may also consider the procedural history of the case recited in any prior appellate opinion.  However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule.  The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens.  *A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.*  If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges."  (Italics added.)

On November 23, 2021, the Supreme Court ordered Division One of the Second Appellate District to vacate *Duke*.  (See *Garrison*, *supra*, 73 Cal.App.5th at p. 745.)  "The Supreme Court's vacation of *Duke* and the Legislature's recent amendment to section 1170.95 resolve[d] th[e] [aforementioned] split [of authority,] now requiring the trial court, acting as an independent fact finder, to determine beyond a reasonable doubt whether defendant is guilty of murder under a valid theory of murder."  (*Garrison*, *supra*, 73 Cal.App.5th at p. 745, fn. omitted; see *People v. Clements* (2022) 75 Cal.App.5th 276, 295 ["[T]he plain text of the statute requires the trial judge to sit as a fact finder, not as a quasi-appellate court."].)

14.

c. *Analysis*

On appeal, defendant argues that the trial court "erred by lightening the prosecutor's burden of proof, requiring not proof of guilt 'beyond a reasonable doubt' but rather only some evidence of guilt on which a jury 'could' convict." We agree that the court erroneously applied a lower standard of proof in pronouncing that "the jury *could* find, beyond a reasonable doubt, that [defendant] was an actual killer based on [the] evidence . . . ." (Italics added.) The question now is whether this error was prejudicial.

The requirement that the prosecution must prove beyond a reasonable doubt that a petitioner is ineligible for relief under section 1170.95 is "purely a creature of state statutory law" (*People v. Epps* (2001) 25 Cal.4th 19, 29) and therefore subject to the harmless-error test set forth in *People v. Watson* (1956) 46 Cal.2d 818. (Cf. *Lewis*, *supra*, 11 Cal.5th at pp. 973-974 [denial of statutory right to counsel in § 1170.95 proceeding implicates state law only and is evaluated for error under *Watson*].) Under this standard, an error is reversible "only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, *supra*, at p. 836.)

We conclude that it is not reasonably probable that a more favorable result would have been reached absent the error. As noted, the court determined that substantial evidence supported a first degree murder conviction based on a theory that defendant was the actual killer. Notably, it highlighted that "*the jury* could" make such a finding. (Italics added.) By contrast, however, the court itself subsequently found that defendant "was clearly an aider and abettor in the case" and "clearly . . . responsible" as a "major participant" in the robbery. In reaching these conclusions, it independently reviewed the evidence, assessed defendant's credibility as a testifying witness, and resolved that the facts "clearly" satisfied the elements of these theories. (See CALCRIM No. 220 ["Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the

15.

charge is true."]; cf. *People v. Jones* (1990) 51 Cal.3d 294, 314 ["[I]f the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder."]; *In re Michael G.* (2012) 203 Cal.App.4th 580, 589 ["The substantial evidence standard of review is generally considered the most difficult standard of review to meet, as it should be, because it is not the function of the reviewing court to determine the facts."].) In other words, notwithstanding the error, the court still determined defendant was guilty of murder under a valid theory of murder beyond a reasonable doubt.

Since the error was harmless under *Watson*, a remand for a new evidentiary hearing is unnecessary.

## II.    Prior prison term enhancement

At the time defendant was sentenced, section 667.5, former subdivision (b) provided, in part:

> "[W]here the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term or county jail term imposed under subdivision (h) of Section 1170 or when sentence is not suspended for any felony . . . ."

After defendant was sentenced, but while his case was still pending on appeal, the Legislature enacted Senate Bill No. 136 (Stats. 2019, ch. 590, § 1). Now, section 667.5, subdivision (b) provides, in part:

> "[I]f the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code . . . ."

16.

Defendant asserts that Senate Bill No. 136 applies retroactively to the case and asks us to strike the prior prison term enhancement because the underlying offense was not a sexually violent offense. The Attorney General agrees. We accept this concession.

**<u>DISPOSITION</u>**

The order denying defendant's petition for resentencing is affirmed.

The prior prison term enhancement imposed pursuant to section 667.5, subdivision (b) is stricken. The trial court shall prepare a corrected abstract of judgment reflecting the foregoing modification and transmit certified copies thereof to the appropriate authorities. In all other respects, the judgment of conviction is affirmed.

DETJEN, J.

WE CONCUR:

LEVY, Acting P. J.

SNAUFFER, J.

17.